STATE of Missouri, Respondent,

v.

John S. GARCIA, Appellant.

No. WD 34438.

Missouri Court of Appeals,
Western District.

Sept. 25, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Nov. 27, 1984.

Application to Transfer Denied
Jan. 15, 1985.

James W. Fletcher, Public Defender, Sean D. O'Brien, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., David C. Mason, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and BERREY, JJ.

LOWENSTEIN, Presiding Judge.

John S. Garcia appeals from a jury verdict of guilty of second degree arson. The jury recommended a sentence of seven years and a $5,000.00 fine. The trial court sentenced him to seven years. The defendant does not challenge the sufficiency of the evidence to support the jury verdict.

On August 26, 1979 fire damaged Scarlet O'Hara's, a bar-discotheque in Kansas City, Missouri. From the evidence discovered, the city's Arson and Bomb Unit concluded that the fire had been intentionally set.

The defendant had been the general manager of Scarlet O'Hara's and had personally invested between $15,000.00 and $18,000.00 in the business at the time of the fire. The building and contents were insured for $317,860.00 and a claim was filed after the fire. In May, June and July of 1979 income of the business bank accounts were closed because of numerous overdrafts. At the time of the fire Scarlet O'Hara's owed $5,197.95 to liquor wholesalers, some of whom were promised payment out of the insurance proceeds.

The state's chief witness, Gerald Hopkins, was a good friend of the defendant, and worked part-time at Scarlet O'Hara's and part-time as a printer. After being arrested for counterfeiting in July 1980, Hopkins negotiated a deal with federal authorities whereby he would testify against the defendant on this arson charge in exchange for probation on the counterfeit charge and a guarantee he would not be incarcerated for arson. At about the same time, the defendant entered a guilty plea for possession of counterfeit currency.

Hopkins testified that he was with the defendant at the bar on the night in question, and that the defendant told him he was "going to burn the mother_____." Then Hopkins agreed to act as lookout while the defendant set the fire. Afterwards the two men walked to the defendant's apartment where the defendant remarked that the fire "should really be going by now."

■ The defendant's first contention is that the trial court erred in permitting testimony by Hopkins that there was fear among people who worked at Scarlet O'Hara's that "because of the clientele we had, the place might be bugged from time to time." Hopkins said this in response to the prosecutor's question about why the defendant and Hopkins went into the alley by the bar to discuss burning the building. This court held in *State v. Pilchak*, 655 S.W.2d 646 (Mo.App.1983) that in order to invoke the rule that evidence which tends to prove other crimes is inadmissible, there must be evidence that the defendant has committed, or has been accused of, charged with, convicted of, or been definitely associated with another crime or crimes. The statement of Hopkins did not imply that the defendant was a criminal, either personally, or as the bar's manager; at most it implied that the bar's customers might be

associated with crime. Therefore the defendant's contention is without merit.

When the state's witness, Hopkins said from the stand he had not seen the defendant, "since he was sent to jail on the counterfeiting," Garcia moved for a mistrial. The request was denied. The jury was instructed to disregard the answer—Garcia contends this relief did not cure the prejudicial effect of the remark. The lawyers had agreed prior to trial to avoid any reference to the counterfeiting matter. A decision had not been made as to whether Garcia would testify in his own behalf. Garcia says once the "cat was let out of the bag" by Hopkins on the prior conviction, it affected his decision so that he was forced to testify and could not remain silent.

■ There is no contention but that the statement was volunteered by the witness and was not responsive to a prosecutor's question. The defendant's point on appeal doesn't come right out and say this testimony alone changed his strategy on taking the stand. He links this statement to the presentation to the jury of the "wiretapping" or bugging in point one, *supra*, and of the being "caught red handed," discussed in the next point as influencing his right to waive the right to not testify. The point is not well taken. The evidence here was not admissible, but the trial judge promptly took action to cure the effect. The trial judge's decision to not grant a mistrial will be sustained absent an abuse of discretion. In *State v. Warden*, 591 S.W.2d 170, 172 (Mo.App.1979) the court said:

> However, where a state's witness volunteers an unresponsive reference to yet another unrelated, separate and distinct crime, such reference may or may not constitute reversible error. In this respect, the trial court's decision to grant or not to grant a mistrial due to such an unresponsive reference is paid great deference, primarily because that court occupies a superior position from which to gauge the remark's prejudicial effect.

See *State v. Ford*, 623 S.W.2d 574, 576 (Mo.App.1981); *State v. McClain*, 531 S.W.2d 40, 41–42 (Mo.App.1975). A similar statement was involved in *State v. Dennison*, 428 S.W.2d 573 (Mo.1968). The court there said at page 577:

> Where improper evidence comes into a case but is promptly stricken by the court and the jury is instructed to disregard it, the reviewing court, in order to hold that the failure to grant a mistrial was reversible error, must determine and conclude as a matter of law from the entire record that the error was prejudicial and so impressive that its effect was not removed by the action of the trial court.

There is no reversible error here.

■ The defendant next claims error in his failure to get a mistrial declared for question by the state of him on cross-examination. On direct examination by Garcia's attorney, he admitted his prior conviction on counterfeiting charges. He was then asked by his attorney, "why was it that you pled guilty," to which he answered, "because I was guilty." On cross-examination he again acknowledged he had entered the plea because he was guilty and was then asked:

> Q. Now, isn't it true, Mr. Garcia, that another reason you pled guilty is because you were caught red-handed with the counterfeit charges?
>
> Defense Counsel: Objection, Your Honor. May we approach the bench, please?
>
> [The following proceedings were had AT THE BENCH]:
>
> Defense Counsel: At this point in time we're going to be dealing with the conviction, and I would request the Court to declare a mistrial.
>
> THE COURT: Overruled.
>
> Defense Counsel: And I would ask the Court sustain my objection to counsel's question.
>
> THE COURT: Overruled.
>
> [The following proceedings returned to OPEN COURT]:

Q. We're going into the reason as to why you pled guilty on the counterfeit charges—

A. Okay.

Q. —and could you tell the members of the jury whether at the time you were arrested on the counterfeit charges, you were found with the counterfeit bills in your possession.

A. Yes, I was caught red-handed.

Garcia contends the "caught red-handed" questions went beyond impeachment or using the convictions to affect his credibility. Sections 491.050 and 546.260 RSMo. *State v. Giffin,* 640 S.W.2d 128, 132 (Mo.1982). He notes the prosecutor should not be allowed to ask the accused of the details of those crimes which led to the convictions, but can go into the nature, dates and places of the occurrences and the sentences that resulted. *State v. Sullivan,* 553 S.W.2d 510, 515 (Mo.App.1977). The defendant says this questioning unduly emphasized the prior conviction so as to suggest guilt on the present charge. *State v. Sanders,* 634 S.W.2d 525, 527 (Mo.App.1982).

Under the facts here, the prosecutor did not ask a series of questions by reading from a prior information. *Sanders, supra,* at 528. Here the defendant on direct invited the questions asked by the state. He left the impression that he entered a plea when he was guilty and that he was innocent, when as here he did not enter a plea. In any event, the questions here did not go into such detail as to the prior conviction to warrant a mistrial. *State v. Woods,* 637 S.W.2d 113, 119 (Mo.App.1982).

■ The defendant's fourth contention is the failure to record the grand jury testimony and provide a copy to the defendant under Rule 25.03(A)(3) was a per se violation of the defendant's discovery rights. However, in *State v. Greer,* 605 S.W.2d 93 (Mo.App.1980) the Missouri Supreme Court held that there is no requirement to record grand jury proceedings. Defendant contends that because the Federal Rule of Criminal procedure 6(e)(1) has been amended since *Greer* to require recording in every case, this court should change the Missouri rule.

■ In *State v. Thomas,* 674 S.W.2d 131 (Mo.App.1984), a case decided since the Federal rule change, the court reaffirmed *Greer* stating that "the Supreme Court recognized that in some states, by court rule or statute, the recording of grand jury testimony is mandatory, but that in Missouri, as well as most other states, the trial court has the discretion to order the transcription of grand jury proceeding, but is not required to do so." The *Thomas* court said the appellant failed to demonstrate an abuse of discretion in the trial court's denial of his motion to record and transcribe the testimony before the grand jury. The same is true in this case; this point is ruled against the defendant.

■ The defendant's final contention is that the trial court abused its discretion by failing to reduce the defendant's jail time. This court held in *State v. Rule,* 543 S.W.2d 325, 326 (Mo.App.1976) that there must be a "showing that passion and prejudice of the jury in its sentencing function so clearly appears from the record that the trial court abused its discretion in declining to reduce punishment." Here the trial court did reduce the punishment by eliminating the $5,000.00 fine. The evidence was overwhelming that the defendant was guilty of arson, and the seven year sentence was not unreasonable. His point is denied.

■ While none of the defendant's points individually show an abuse of the trial court's discretion, even if there were error, the cumulative effect would result in no prejudice to the defendant to warrant a new trial.

All the points are denied. The judgment of conviction is affirmed.

All concur.