STATE of Missouri, Plaintiff–
Respondent,

v.

David G. HENSCHEL, Defendant–
Appellant.

No. 26216.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 24, 2005.

Motion for Rehearing or Transfer
Denied March 17, 2005.

Mel L. Gilbert, Buffalo, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Leslie E. McNamara, Assistant Attorney General, Jefferson City, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

David G. Henschel ("Appellant"), who had two previous convictions for driving while intoxicated (DWI), was charged with a class D felony DWI in violation of section 577.010.[1] He was found guilty after a jury trial, sentenced by the court to three years in the department of corrections, and now appeals the judgment of conviction. Appellant brings two points on appeal. His first point claims the trial court should have granted a new trial when a rebuttal witness for the State, Appellant's wife,[2] filed an affidavit which claimed she was mistaken in her trial testimony; his second point posits error in allowing the State to cross-examine him about his prior convictions. We affirm.

■■■■ The substance of Appellant's first point is that the affidavit of Karrie was newly discovered evidence, warranting a new trial because it was the only evidence that Appellant consumed alcoholic beverages on the day of his arrest, and her testimony undermined Appellant's defense that he was drinking non-alcoholic beverages. The State counters that the evidence was not newly discovered, could have been procured with due diligence, and was not material because it was cumulative of other testimony. We review the trial court ruling on a motion for new trial based upon newly discovered evidence for an abuse of discretion. *State v. Rutter*, 93 S.W.3d 714, 730 (Mo. banc 2002).

Karrie testified that Appellant did not sleep at home the night before the incident of his arrest and that when he arrived home his speech was slurred and he staggered. Karrie, who had often seen Appellant after he had been drinking, believed he was drunk. Karrie and Appellant got into an argument over Appellant's stepson. Appellant went into his stepson's room, "grabbed him out of bed and ... knocked him around the walls, in the head against the wall." Karrie testified that her father-in-law was in St. Louis and not present on the date of the argument, or else he would have separated her son and Appellant because he would do so when Appellant was drinking. Karrie called her sister, Karen, told her what happened and took her son to Karen's home; she then went home and spoke with Appellant, who was drinking Budweiser beer. When Appellant stated he was going over to get his stepson, Karrie called Karen to warn her that Appellant was on his way to Karen's house and that he was drunk. Karen called the police and hid with her nephew in a nearby horse trailer. The police arrived shortly after the call and subsequently arrested Appellant for driving while intoxicated.

Appellant's version of the events was that he was hanging Sheetrock with his father-in-law until 3:00 a.m., prior to the incident; he claimed he went home at 3:00 a.m. and slept for around three and one-half hours. He testified that he did not consume any alcohol that evening or prior to the incident; his testimony concerning the altercation with his stepson did not contradict Karrie's version of the events leading to his arrest. He countered any testimony concerning his appearance by claiming the Sheetrock dust caused his eyes to be bloodshot and a hearing problem from childhood caused his slurred speech.

1. All statutory references are to RSMo 2000 unless otherwise indicated.

2. Appellant and Karrie Henschel separated six weeks prior to the trial and were in the process of obtaining a divorce. We refer to her as Karrie for ease of discussion and mean no disrespect by using her first name.

In her affidavit, Karrie claimed, after refreshing her memory with receipts, she was in error when she testified that on the date of this incident that her father-in-law was in St. Louis. She further stated:

6. I specifically had recalled that the incident involving the drinking by David occurred while David's father was in St. Louis and not working on his house.

7. I picked up the car with David's father that day so I know his father was not in St. Louis as I testified at trial.

8. Another item that confused me during my mistaken testimony was that David and I had got (sic) into arguments on a number of occasions, especially around two-and one-half (21/2) years ago.

9. Now that I have better recollection my testimony at another trial would be different than what I said on February 6, 2004.

We do not find anything in the affidavit to be newly discovered evidence that was not discoverable with due diligence prior to trial. While Appellant makes much of the fact that Karrie was not an endorsed witness by the State as a reason that Appellant did not depose her, clearly, she had important information regarding the events which led up to Appellant's arrest. The argument between Karrie and Appellant set in motion the events which led to Appellant's arrest; he was arrested after he drove over to his sister-in-law's house to retrieve his stepson after the argument. The fact that the State may not have interviewed Karrie prior to the trial did not preclude Appellant from doing so.

Furthermore, in her affidavit, Karrie did not contradict any of the facts regarding an argument over her son, her observa-tions of Appellant's appearance and demeanor, or her warning call to her sister. Karen also provided supplementary and uncontradicted testimony that she received a frantic phone call from Karrie that Appellant was angry and drunk, she called the police as a result of that phone call, and she hid in a horse trailer with her nephew until the police got there. She testified that Appellant's speech was slurred, which only happened when he was drunk, and he staggered when he got out of the car, which he never did if he was sober.

Although Appellant claims it was critical that only Karrie provided any testimony that he consumed alcoholic beverages on that day, it is not necessary for anyone to have seen Appellant consume alcoholic beverages on that day. In addition to Karen's testimony, Deputy Sheriff Bill Shepard witnessed Appellant with a strong odor of alcohol on his breath, glassy eyes, slurred speech, and swaying when he walked back to his car. Appellant lied to Shepard twice when Appellant was asked who drove the car. Appellant initially said his wife had driven him to Karen's house, he then stated that his sister-in-law drove him, but Appellant admitted at trial that he drove himself to Karen's house.

Another deputy, Scott Rice, also observed that Appellant had a strong odor of alcoholic beverages about him, had watery, bloodshot and glassy eyes, and slurred speech. Appellant was given field sobriety tests, which he did not pass; he then refused to submit to a chemical test of his breath.[3] We find the trial court did not abuse its discretion when it denied a new trial based on the affidavit of Appellant's wife. Appellant's first point is denied.

---

3. Although Appellant contends he told Deputy Rice that he wanted to take the breath test, we accept the evidence in the light most fa-vorable to the judgment. *Burkholder ex rel. Burkholder v. Burkholder,* 48 S.W.3d 596, 597–598 (Mo. banc 2001).

■ Appellant's second point claims a violation of sections 577.023.6 [4] and 577.023.14 [5]; he claims that each of these statutes prohibits the state from ever questioning a defendant about prior alcohol-related offenses. Appellant does not cite to any cases for this unique proposition, but claims the clear legislative intent of both sections is to keep the matter of prior convictions away from the jury. The proposition that the legislature intended for the jury to decide each case on its merits is simply a restatement of a basic principle of law that a defendant is on trial for the crime with which he is charged. If Appellant had not taken the stand as a witness, the jury would not have been told of any prior alcohol-related offenses.

■ On the other hand, when an accused elects to testify on his or her behalf, the State has an absolute right to impeach him with prior convictions of felonies or misdemeanors. *M.A.B. v. Nicely*, 909 S.W.2d 669, 671 (Mo. banc 1995). Section 491.050 provides the same:

> Any person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect his credibility in a criminal case. Such proof may be either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer.

Section 577.023 is a statute known as a habitual offender statute, which defines a recidivist status, for which the offender may be more heavily punished, rather than defining a separate offense, or even a separate element of the underlying offense with which the defendant is charged. *State v. Cullen*, 39 S.W.3d 899, 904 (Mo. App. E.D.2001). The proof of prior convictions merely serves to authorize enhanced punishment for the underlying offense charged, if the defendant is found guilty. *Id.* In fact, the title of section 577.023 is "[p]ersistent and prior offenders—enhanced penalties—imprisonment requirements, exceptions—procedures." There is nothing in section 577.023 to trump well-established evidentiary rules or section 491.050 regarding the right to impeach witnesses with prior convictions. Appellant's second point has no merit.

The judgment of conviction is affirmed.

GARRISON, P.J., and PREWITT, J., concur.

---

**4.** Section 577.023.6, which provides for enhanced penalties for prior and persistent offenders, states the facts regarding whether the defendant is a prior and persistent offender "shall be pleaded, established and found prior to submission to the jury outside of its hearing."

**5.** Section 577.023.14 further provides in pertinent part:

Evidence of prior convictions shall be heard and determined by the trial court out of the hearing of the jury prior to the submission of the case to the jury, and shall include but not be limited to evidence of convictions received by a search of the records of the Missouri uniform law enforcement system maintained by the Missouri state highway patrol. After hearing the evidence, the court shall enter its findings thereon.