Paul R. TAYLOR, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 26666.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 6, 2005.

Mark A. Grothoff, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Paul Taylor ("Taylor") appeals from the denial of his motion to vacate, set aside or correct judgment or sentence pursuant to Rule 29.15.[1] His amended motion alleged, *inter alia*, that trial counsel was ineffective for not objecting to comments in closing argument which permitted the jury to consider Taylor's prior convictions for the purpose of determining his guilt or propensity to commit crimes. Following an evidentiary hearing, the motion court denied this aspect of the amended motion on the grounds that the prosecutor's arguments either constituted appropriate comments concerning Taylor's credibility, or they were invited by Taylor's own trial strategy. Taylor claims the motion court's conclusions are clearly erroneous. We affirm.

## I. Facts and Procedural History

Taylor was charged by information with committing the class A felony of murder in

---

1. All references to rules are to Missouri Court Rules (2005).

the second degree in violation of § 565.021.[2] This murder charge arose out of an altercation in which the victim, Robert Wylder ("Victim"), was beaten to death by Taylor. The information also alleged that Taylor was a prior offender because he had previously pled guilty to the felony offense of unlawful use of a weapon.

At trial, the State presented evidence that Victim was sitting in his truck with a passenger, Brian Watker, when Taylor walked up and struck Watker without provocation. The blow knocked Watker out. When he regained consciousness, he saw Taylor sitting astride Victim's chest, beating him. Watker left the scene to get help, but Victim was already dead when Watker returned with the police. Taylor presented evidence that it was Victim and Watker who attacked Taylor without provocation; he merely acted in self-defense to repel their attack. All three men were intoxicated when the brawl occurred.

The jury received verdict-directing instructions on second degree murder and the lesser-included offenses of voluntary manslaughter and involuntary manslaughter. *See* § 565.025. The law of self-defense was explained via a separate instruction. The jury acquitted Taylor of second degree murder and voluntary manslaughter, but he was convicted of involuntary manslaughter. Having found Taylor to be a prior offender as defined in § 558.016.2, the trial court imposed a sentence of seven years imprisonment. We affirmed Taylor's conviction and sentence on direct appeal in *State v. Taylor*, 123 S.W.3d 924 (Mo.App.2004).

Thereafter, Taylor filed a *pro se* motion to vacate, set aside or correct judgment or sentence pursuant to Rule 29.15. Counsel was appointed, and he filed an amended motion on Taylor's behalf. After an evi-

dentiary hearing was held, the motion court denied the motion.

The facts supporting Taylor's involuntary manslaughter conviction were extensively recounted in our opinion addressing the issues raised in his direct appeal and need not be repeated here. *See Taylor*, 123 S.W.3d at 925–28. We summarize below only those additional facts relevant to the issue presented by this second appeal: whether Taylor's trial counsel was ineffective for not objecting to the prosecutor's arguments concerning Taylor's prior convictions.

During Taylor's case in chief, he was asked about his prior convictions and gave the following testimony:

Q. And, before we get too far along, Paul, I want you to explain to the jury a little bit of some of the trouble you've had with the law in the past, okay?

A. Yes.

Q. Are you ready to do that?

A. Yes.

Q. Okay, sir, what sort of convictions have you had?

A. I've had an unlawful use of a weapon. I've had two D.W.I.s, domestic violence, and a paraphernalia.

Q. Okay, you said you'd had an unlawful-use-of-a-weapon conviction, right?

A. Yes.

Q. And, where was that at?

A. Stone County.

Q. How old were you?

A. Seventeen.

Q. And, you're how old now?

A. Thirty-one.

Q. And, you said that you've had a couple of D.W.I.s?

A. Yes.

---

**2.** All references to statutes are to RSMo (2000).

Q. Where were those?

A. Here in Taney County.

Q. And, you've had a drug paraphernalia and domestic assault?

A. Yes.

Q. Where were those?

A. Christian County.

Q. Let me ask you, Paul, have you ever had a trial on any of those prior convictions?

A. No, I have not.

Q. Did you plead guilty?

A. Yes, I did.

Q. Why did you plead guilty to those charges?

A. Because I was guilty.

Later in Taylor's direct examination, he gave the following additional testimony concerning his prior convictions:

Q. Paul, do you remember being asked at some point by Detective Swan or Detective Rozell—well, let me back up, if I may. You explained to the jury that you were convicted in Stone County, Missouri, of unlawful use of a weapon, right?

A. Yes, I do.

Q. What kind of crime was that? Was it a misdemeanor—

A.—No. It was a felony.

Q. And, did you actually end up having to do some prison time because of it?

A. Yes, I did.

After Taylor testified about his prior convictions on direct examination, he was cross-examined on this subject. Taylor admitted that, after he was charged with second degree murder for killing Victim in September 2000, he committed an assault for which he was convicted on November 14, 2001. He denied, however, that he was convicted of a second assault on May 23, 2002. The trial court admitted certified copies of these convictions, which showed

both assaults had been committed against Taylor's wife. Even after reviewing the certified copies, Taylor steadfastly denied that he had been twice convicted of domestic violence after September 2000.

On redirect examination, Taylor was questioned once again about his prior convictions and gave the following testimony:

Q. Now, Paul, you told the ladies and gentlemen of the jury that you had an assault conviction out of Christian County, right?

A. Correct.

Q. And, [the prosecutor] presented to you two convictions, right?

A. Correct.

Q. Do you remember the additional conviction he showed you?

A. No.

Q. Can you just real briefly explain how those two things resulted, those two cases?

A. Resulted?

Q. How they came about.

A. How they came about, it's been pretty hard—pretty hard times last two—you know, two years, two-and-a-half years, and you know, sometimes you can be pretty hurtful to your loved ones, and the way for my wife to—to get even with me at—at the time was she would call 911.

Q. In fact, Paul, those—those third-degree assaults, those are with regard to your wife, correct?

A. Correct.

At the instruction conference, the trial court decided to give Instruction No. 11, which was an impeachment instruction patterned after MAI–CR 3d 310.10. Just prior to the commencement of closing argument, the court read all of the instructions to the jury. Instruction No. 11 stated:

If you find and believe from the evidence that defendant was found guilty of the offense of unlawful use of a weapon, driving while intoxicated, possession of drug paraphernalia, driving while intoxicated, driving while license suspended, 3rd degree assault, and 3rd degree assault, you may consider that evidence for the sole purpose of deciding the believability of the defendant and the weight to be given to his testimony and for no other purpose. You must not consider such previous finding of guilt as any evidence that the defendant is guilty of any offense for which he is now on trial.

Near the end of the State's rebuttal argument, the prosecutor began attacking Taylor's credibility as a witness. During this phase of the argument, which covered only about four pages of the transcript, the prosecutor made four comments forming the basis for Taylor's complaints in this appeal. To permit the specific comments challenged by Taylor to be evaluated in context, they are set forth below in italicized type:

### Comments 1 and 2

Now, let's talk about the defendant's integrity and his honesty, when you talk about him. He came up and he decided he wanted to tell you a story. I can only say to characterize his story as memory is a kind factor. Memory is a kind factor. He only remembers the things that helped him, and if in fact they hurt him, he didn't remember. Remember he didn't tell you about all of the convictions. Let's think about his credibility. Here's a man that's charged with murder in the second degree, and the police arrest him, and he's charged, and he

pleads guilty to domestic violence, and his explanation to you was "Well, I've been under a lot of pressure. I committed domestic violence and pled guilty for killing—for hitting my own wife." Now listen to that, and what did he say was the reason you could get away with that? He said "I've been under a lot of pressure so I committed domestic violence." I assume, hit his wife, assaulted his wife. *Think about that. If that man will assault his loved one and seeks justification, what will he not do to a stranger? We cannot put a police officer with him 24 hours a day to correct his bad judgment.* Society doesn't owe that to us. His statement at least "Oh, I'm never anybody that tries to—tries to have fights, get in fights".[3] *This is a whole litany of his fights and assaulting people,* of unlawful use of a weapon.

### Comment 3

Now, defense counsel, and he's very admirably represented his client, but as I said before, that's why we have prisons. We can't put police officers behind people who use violence when they drink. We can't do it. We just don't have enough police officers, and every time we have known something about the defendant, he can't control himself. *He can't keep the violence away,* and again, I was like stunned when he said he wasn't going to ask for help for the victim, but these domestic-violence cases occurred after he was charged with murder.

### Comment 4

This case is very important, as the defense attorney said, and that is right. Can you believe this man's testimony,

3. During the State's case, the trial court admitted two tape-recorded statements that Taylor gave to police. The statement attributed to Taylor by the prosecutor was contained on one of the tapes.

two D.W.I.s, assault on his wife twice after this? Can you believe the credibility, his selective memory, unlawful use of a weapon? This is why we have penitentiaries, folks. That's the reason we have them, and they're horrible, and we don't ask jurors to send people to the penitentiary lightly. This man cannot be trusted to live with liberty. He cannot be trusted. *He's shown time and time again that he has forfeited his right to live among free men.* Our responsibility is clear. We have the responsibility to the defendant, and we have a responsibility to our society. Yes, we have a right to self-defense too.

In Taylor's amended Rule 29.15 motion, he alleged that trial counsel's failure to object to these comments permitted the jury to consider Taylor's prior convictions for the purpose of determining his guilt or propensity to commit crimes. The motion court denied relief because the prosecutor's comments were directed to Taylor's credibility and were invited by his own trial strategy of using his prior convictions as substantive evidence of innocence.[4] After the motion court denied Taylor's motion, he appealed.

## II. Standard of Review

Taylor's amended Rule 29.15 motion alleged ineffective assistance by his trial counsel. The burden of proving this claim rested on Taylor. Rule 29.15(i). Missouri follows the *Strickland* standard to determine whether an attorney provided ineffective assistance to a criminal defendant.[5] *Deck v. State,* 68 S.W.3d 418, 425 (Mo.

banc 2002). To prevail, Taylor had to prove: "(1) that his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances; and (2) that he was prejudiced by counsel's failures." *Black v. State,* 151 S.W.3d 49, 54 (Mo. banc 2004). Taylor had to prove each portion of this two-pronged performance and prejudice test in order to succeed below on his ineffective assistance of counsel claim. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987).

In attempting to satisfy the first prong of the *Strickland* test, Taylor bore a heavy burden because a reviewing court presumes that trial counsel's conduct was reasonable and effective. *Clayton v. State,* 63 S.W.3d 201, 206 (Mo. banc 2001). To overcome this "strong presumption" that counsel provided competent representation, Taylor had to prove "counsel's representation fell below an objective standard of reasonableness." *Deck,* 68 S.W.3d at 425–426. This standard is met by identifying specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professionally competent assistance. *Id.* at 426.

Taylor bore an equally heavy burden in proving the second prong of the *Strickland* test. *Clayton,* 63 S.W.3d at 206. For prejudice to exist, Taylor had to prove "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466

---

4. The motion court noted that Taylor chose to use a unique strategy in this case by testifying on direct that he had never been tried for any offense because he always pled guilty. "The import of this colloquy amounts to a strategy by the defense to use his prior tendencies to plead guilty to infer a propensity for always admitting his prior crimes to imply his inno-

cence of the charges at hand. The prosecutor argued Movant's priors in final argument in response to the defense's unique use of Movant's prior pleas of guilt to infer innocence."

5. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

U.S. at 694, 104 S.Ct. 2052; *Black,* 151 S.W.3d at 55.

Taylor's amended motion was decided by the same judge who presided over Taylor's criminal trial. After an evidentiary hearing, the judge denied relief. His decision is presumptively correct. *See Bryan v. State,* 134 S.W.3d 795, 798 (Mo.App. 2004); *Crawford v. State,* 105 S.W.3d 926, 927–28 (Mo.App.2003). Our review is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k); *State v. Tokar,* 918 S.W.2d 753, 761 (Mo. banc 1996). Findings of fact and conclusions of law are clearly erroneous only when, after reviewing the entire record, this Court is left with the definite and firm impression that a mistake has been made. *State v. Taylor,* 929 S.W.2d 209, 224 (Mo. banc 1996).

### III. Discussion and Decision

█ The only issue presented by this appeal is whether Taylor's attorney was ineffective for failing to object to the four comments made by the prosecutor during his rebuttal argument. Taylor contends that, by these comments, the prosecutor improperly argued Taylor's prior convictions could be considered not only in weighing his credibility, but also as evidence of his guilt or propensity to commit crimes. Before addressing that central question, we must briefly review Missouri law concerning impeachment of a criminal defendant with prior convictions.

At common law, the defendant in a criminal trial could not testify on his own behalf. *State v. Hutchinson,* 458 S.W.2d 553, 554 (Mo. banc 1970). The right to do so was first conferred by statute in 1877. *Id.* The present version of this statute is contained in § 546.260. Subsection 1 of this statute states, in pertinent part, as follows:

No person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination, or by reason of being the husband or wife of the accused, but any such facts may be shown for the purpose of affecting the credibility of such witness; provided, that no person on trial or examination, nor wife or husband of such person, shall be required to testify, but any such person may testify at his or her option either on behalf of or against the defendant, and shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case. . . .

Thus, Taylor was a competent witness to testify on his own behalf, but he was subject to cross-examination as to any matter covered in his direct examination, and he could be contradicted and impeached like any other witness in the case.

One common method of impeaching a witness is by attacking his or her credibility through proof of prior crimes. Section 491.050 states:

Any person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect his credibility in a criminal case. Such proof may be either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer.

Because Taylor chose to testify on his own behalf in his criminal case, he was subject to impeachment with proof of his prior criminal convictions, pleas of guilty, pleas

of *nolo contendere* and findings of guilt. § 491.050.

When a defendant elects to testify on his or her own behalf, the State has an absolute right to impeach the accused with prior convictions. *M.A.B. v. Nicely*, 909 S.W.2d 669, 671 (Mo. banc 1995); *State v. Giffin*, 640 S.W.2d 128, 132 (Mo.1982); *State v. Henschel*, 159 S.W.3d 853, 856 (Mo.App.2005). To prove a conviction, a prosecutor may show the nature of the charge, place and date of the occurrence, and the sentence imposed. *State v. Skelton*, 887 S.W.2d 699, 704 (Mo.App.1994). If an accused makes statements designed to blunt the impact of a prior conviction, however, it is within the trial court's discretion to permit the prosecutor to test and challenge such statements by going into the details of the crime leading to a prior conviction. *Id.; State v. Simmons*, 825 S.W.2d 361, 364 (Mo.App.1992). Further examination of the accused also is permitted when he or she initially fails to disclose all prior convictions. *State v. Taylor*, 589 S.W.2d 302, 304 (Mo. banc 1979); *State v. Moore*, 84 S.W.3d 564, 567–68 (Mo.App.2002).

"[W]here prior convictions have been presented to a jury for the sole legitimate purpose of affecting a defendant's credibility, the final arguments of the State should be carefully confined to that purpose and subject." *State v. Slay*, 406 S.W.2d 575, 580 (Mo.1966). Under such circumstances, a prosecutor should not attempt to argue prior convictions as substantive evidence of the defendant's guilt. *See State v. Heinz*, 607 S.W.2d 873, 880 (Mo.App.1980).

Although § 491.050 permits proof of prior convictions to be made by the record or through cross-examination, a defendant may disclose such information during direct examination to mitigate the effect of the disclosure on his or her credibility. *See State v. Gregory*, 42 S.W.3d 766, 771 (Mo.App.2001). In the case at bar, Taylor chose to address the topic of his prior convictions in his direct and redirect examinations. The manner in which he did so, however, went beyond the sole legitimate purpose of adducing evidence concerning his credibility in the following respects.

First, Taylor made it a point to emphasize that he had never been tried for any offense; he had always pled guilty because he was guilty. Moreover, Taylor pointed out that he had pled guilty to a felony charge of unlawful use of a weapon and served time in prison as the result of that plea. Taylor's testimony implied that he always pled guilty when he knew he had done something wrong, even if the charge was very serious. *See Simmons*, 825 S.W.2d at 364; *State v. Garcia*, 682 S.W.2d 12, 14–15 (Mo.App.1984). Thus, as the trial court noted in its conclusions of law, Taylor attempted to use his record of prior criminal convictions as substantive evidence that he was innocent and had acted in self-defense.

Second, Taylor failed to disclose all of his convictions during his direct examination. On cross-examination, he refused to admit that he had two convictions for third degree assault against his wife. Taylor refused to admit a second conviction even after being shown a certified copy of the record.

Third, he attempted to blunt the impact of his convictions for unlawful use of a weapon and domestic violence. With respect to the former conviction, Taylor attempted to de-emphasize the matter by pointing out that he pled guilty to this offense 14 years earlier, when he was only 17 years old. With respect to the latter convictions, he attempted to excuse his behavior by denying that he had really assaulted his wife; instead, he claimed that when he would say hurtful things to his wife due to stress, she would "get even" with him by calling 911. We bear these

facts in mind as we review Taylor's arguments in this appeal.

■ The first rebuttal comment Taylor challenges is: "Think about that. If that man will assault his loved one and seeks justification, what will he not do to a stranger? We cannot put a police officer with him 24 hours a day to correct his bad judgment." This comment was part of an overall attack on Taylor's honesty and credibility by the prosecutor. We interpret this remark to mean that Taylor's denial of responsibility for Victim's murder was not credible. Taylor's testimony was not believable because he had refused to admit responsibility for assaulting his wife and sought to blame his actions on stress. Thus, the jury could not rely upon Taylor's own assessment of whether his behavior in a particular instance had been appropriate because his judgment was flawed. A prosecutor may legitimately comment on a defendant's prior convictions to affect his credibility. *State v. Blackburn*, 789 S.W.2d 126, 128 (Mo.App.1990). Comment 1 does so, but it goes no further. Accordingly, it was not objectionable. Taylor's counsel was not ineffective for failing to make a non-meritorious objection. *Turner v. State*, 158 S.W.3d 804, 807 (Mo.App. 2005).

■ We consider the second, third and fourth rebuttal comments together. They are: (1) "This is a whole litany of his fights and assaulting people...." (2) "He can't keep the violence away ...." and (3) "He's shown time and time again that he has forfeited his right to live among free men." These remarks might have indirectly suggested that Taylor's prior convictions should be used as substantive evidence of his guilt. Under the unique circumstances of this case, however, we conclude the prosecutor's remarks were invited by Taylor's own effort to use his prior convictions as substantive evidence of his innocence. Since Taylor injected this issue into the

case through his own testimony on direct and redirect examinations, the State had a right to respond to this issue in closing argument. *See State v. Davison*, 457 S.W.2d 674, 676 (Mo.1970) (after defendant testified about how the police refused to let him tell his story at the station, the State could properly comment on this testimony in closing argument without violating the general rule that there should be no reference to an accused's post-arrest silence); *State v. Grissom*, 804 S.W.2d 777, 779–80 (Mo.App.1990) (after the defendant testified about uncharged crimes in his direct examination, the trial court did not err in permitting the State to comment on such testimony in closing argument). A defendant may not take advantage of self-invited error or complain about matters he brings into the case. *State v. Crenshaw*, 59 S.W.3d 45, 50 (Mo.App.2001); *State v. Kelly*, 689 S.W.2d 639, 640–41 (Mo.App. 1985). As Comments 2, 3 and 4 were appropriate responses to an issue injected into the case by Taylor, trial counsel was not ineffective for failing to object to these remarks. *Turner*, 158 S.W.3d at 807.

■ We also fail to see how counsel's failure to object was prejudicial. In Taylor's brief, he argues that "[h]ad objections been made, cautionary instructions would have been given, and there is a reasonable probability that the outcome of the trial would have been different." In point of fact, the jurors did receive a cautionary instruction specifically limiting the permissible use of the evidence concerning Taylor's prior convictions. Instruction No. 11, which was read prior to argument and was available to the jurors during deliberations, explicitly told them that they could consider the evidence of Taylor's prior convictions "for the sole purpose of deciding the believability of the defendant and the weight to be given to his testimony and for no other purpose. You must not consider such previous findings of guilt as any evidence that the defendant is guilty of any

offense for which he is now on trial." Therefore, a specific cautionary instruction restricting the jurors' use of evidence concerning Taylor's prior convictions had already been given to the jury in the form of Instruction No. 11. "Appellate courts presume that the juries follow their instructions." *State v. Howard,* 896 S.W.2d 471, 484 (Mo.App.1995). We believe the jury's decision to acquit Taylor of second degree murder and voluntary manslaughter demonstrates that the jury was not improperly influenced by the prosecutor's comments about Taylor's prior convictions.

After a thorough review of the record, we do not have a definite and firm impression that the motion court made a mistake in denying Taylor's request for post-conviction relief. Therefore, the motion court's findings of fact and conclusions of law are not clearly erroneous. *See* Rule 29.15(k). The motion court's order denying Taylor's amended Rule 29.15 motion is affirmed.

GARRISON and BARNEY, JJ., Concur.