

# Missouri Court of Appeals

### Southern District

### Division Two

LEE HARRELL,                                    )
                                               )
    Movant-Appellant,                      )
                                               )
v.                                             )    No. SD32710
                                               )    Filed: 2-24-14
STATE OF MISSOURI,                             )
                                               )
    Respondent-Respondent.                 )

### APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

Honorable Tracie L. Storie, Circuit Judge

**<u>AFFIRMED</u>**

Lee Harrell (Movant) appeals from an order denying his amended Rule 29.15 motion for post-conviction relief after an evidentiary hearing.[1] Because the motion court's decision to deny relief was not clearly erroneous, we affirm.

In July 2009, Movant was charged by information with two offenses. Count I alleged that Movant had committed the class B felony of burglary in the first degree by knowingly and unlawfully entering a building, for the purpose of stealing, while armed with a deadly weapon. *See* § 569.160 RSMo (2000). Count II alleged that Movant had

---

[1] All rule references are to Missouri Court Rules (2013). All statutory references are to RSMo Cum. Supp. (2008) unless otherwise indicated.

committed the unclassified felony of armed criminal action (ACA) by committing the aforementioned burglary with and through the knowing use, assistance and aid of a dangerous instrument. *See* § 571.015 RSMo (2000). A jury found Movant guilty of both offenses. The trial court imposed consecutive sentences of ten and fifteen years, respectively. We affirmed the conviction and sentence on direct appeal in ***State v. Harrell***, 342 S.W.3d 908 (Mo. App. 2011) (hereinafter, ***Harrell I***).

Movant filed a timely *pro se* Rule 29.15 motion for post-conviction relief. Thereafter, appointed counsel filed an amended motion. After conducting an evidentiary hearing, the motion court issued findings of fact and conclusions of law denying relief.[2] This appeal followed.

*Point I*

Movant's first point contends that trial counsel was ineffective for failing to object to Instruction No. 9, the verdict-directing instruction on the ACA charge, because the instruction erroneously contained the definition for a dangerous instrument, rather than a deadly weapon.

To obtain post-conviction relief on the basis of ineffective assistance of counsel, the movant must satisfy the two-prong test in ***Strickland v. Washington***, 466 U.S. 668 (1984). *See* ***Taylor v. State***, 382 S.W.3d 78, 80 (Mo. banc 2012). A movant must establish that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the movant was thereby prejudiced. *Id*. at 80-81. Both the performance and prejudice prongs of the ***Strickland*** test must be proven to obtain relief. ***State v. Kinder***, 942 S.W.2d 313, 335 (Mo. banc 1996). If a movant fails to satisfy either

---

[2] The Honorable Tracie L. Storie acted as both the trial court and motion court judge.

2

prong, the claim fails. *Marschke v. State*, 185 S.W.3d 295, 302 (Mo. App. 2006). Consideration of the other prong is unnecessary. *Id*.

While the motion court noted that Instruction No. 9 was erroneous because it failed to comply with the pattern Missouri Approved Instruction, the motion court also found that Movant was not prejudiced by counsel's failure to object to the instruction. We review that ruling for clear error. Rule 29.15(k); *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000). "A motion court's findings and conclusions are clearly erroneous only if the Court, after reviewing the entire record, is left with the definite and firm impression that a mistake has been made." *Gehrke v. State*, 280 S.W.3d 54, 56-57 (Mo. banc 2009).

Instruction No. 9 stated:

> As to Count II, if you find and believe from the evidence beyond a reasonable doubt:
>
>> First, that defendant committed the B felony of Burglary 1st, as submitted in Instruction No.  7 , and
>>
>> Second, that defendant committed that offense by, with through the use, assistance, and aid of a *deadly weapon*,
>
> then you will find the defendant guilty under Count II of armed criminal action.
>
> As used in this instruction, the term "*dangerous instrument*" means any instrument, article, or substance that, under the circumstances in which it is used, is reasonably capable of causing death or other serious physical injury.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

(Emphasis added.) Movant argues that the erroneous inclusion of the definition of "dangerous instrument" confused and misdirected the jury, and therefore counsel was ineffective in failing to object to its submission.[3]

This Court has already determined that the erroneous substitution of the "dangerous instrument" definition in Instruction No. 9 did not result in plain error. *Harrell I*, 342 S.W.3d at 919-20. As our Supreme Court explained in *Johnson v. State*, 406 S.W.3d 892 (Mo. banc 2013):

> [T]he determination there was no plain error prejudice resulting from the State's comments does not end the inquiry because the *Strickland* standard of prejudice is less rigorous than the plain error standard. *Deck v. State*, 381 S.W.3d 339, 358 (Mo. banc 2012). *Strickland* prejudice requires only that there is a reasonable probability that the result would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. The "theoretical difference in the two standards of review will seldom cause a court to grant postconviction relief after it has denied relief on direct appeal...." *Deck v. State*, 68 S.W.3d 418, 428 (Mo. banc 2002) (citing *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052). There are only a "small number of cases in which the application of the two tests will produce different results." *Id*.

*Id*. at 904. The motion court found that the error in Instruction No. 9 did not result in *Strickland* prejudice to Movant. That finding is not clearly erroneous.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693.

---

[3] There is no dispute that Instruction 9 erroneously contained the definition of "dangerous instrument." *See* Notes on Use 7, MAI-CR 3d 332.02. The general rule is that instructional errors are not cognizable in a Rule 29.15 proceeding unless the error rises to the level of constitutional error. *Tilley v. State*, 202 S.W.3d 726, 732 (Mo. App. 2006). Our review here is limited to whether the motion court clearly erred in finding that Movant was not prejudiced by counsel's failure to object to the submission of Instruction No. 9.

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *see also* **State v. Shurn**, 866 S.W.2d 447, 468 (Mo. banc 1993).

Paragraph Second of Instruction No. 9 required the jury to find beyond a reasonable doubt "that defendant committed that offense by, with through the use, assistance, and aid of a *deadly weapon*." (Emphasis added.) A "deadly weapon" is defined as "any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury, may be discharged, or a switchblade knife, dagger, billy, blackjack or metal knuckles[.]" § 556.061(10). This classification applies irrespective of the weapon's actual use. **State v. Payne**, 250 S.W.3d 815, 819 (Mo. App. 2008). There was no requirement that the term "deadly weapon" be defined in Instruction No. 9, unless the trial court decided to do so or a party so requested. *See* **Harrell**, 342 S.W.3d at 913 n.7; Notes on Use 7, MAI-CR 3d 332.02. As we noted in **Harrell I**, the trial court permitted Movant's counsel to provide the jury with a definition of "deadly weapon" and a case law definition of "dagger" for the jurors to use in deciding whether Paragraph Second had been met. **Harrell I**, 342 S.W.3d at 921-22. Movant was actually better off because of his counsel's decision, in that counsel was permitted to supplement the definition of "deadly weapon" with a not-in-MAI definition of "dagger" used in **Payne**. Movant's counsel then spent most of his argument attempting to convince the jury that the replica sword was not a "deadly weapon." ("What I'm here to talk about is deadly weapons."; "Let's talk about what makes a deadly weapon, because you are not going to get any guidance from the jury instructions.") As

there was ample evidence that the replica sword met the requirements of the correct definitions of deadly weapon and dagger provided by Movant's counsel, Movant suffered no prejudice from the instructional error. *See Harrell I*, 342 S.W.3d at 912-15. Accordingly, there is no reasonable probability that the jurors were confused or misled by Instruction No. 9. Movant's counsel provided correct definitions for "deadly weapon" and "dagger" during closing argument and focused the jurors' attention on whether the replica sword met those definitions.

Assuming *arguendo* the jurors did attempt to apply the "dangerous instrument" definition, our conclusion would not change because the State took on a higher-than-necessary burden because of the error. The definition of deadly weapon applies irrespective of how the defined object is actually used. *See* § 556.061(10); *Payne*, 250 S.W.3d at 819. A "dangerous instrument," on the other hand, is defined as "any instrument, article or substance which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury[.]" § 556.061(9). Because there was evidence that the replica sword had only been used to gain entry to the church and on a door inside the structure, this definition was actually favorable to Movant. By including this definition in Instruction No. 9, the jurors could have believed the State had to prove beyond a reasonable doubt that Movant used the replica sword in a manner which was capable of causing death or serious physical injury. *See* § 566.061(9). "A criminal jury instruction that puts an additional burden on the state beyond that which is legally required in order to establish guilt, is not prejudicial to the defendant." *State v. Livingston*, 801 S.W.2d 344, 350 (Mo. banc 1990). Movant has not shown that there is a

reasonable probability that the outcome of his trial would have been different if counsel had objected to the submission of Instruction No. 9. Point I is denied.

*Point II*

Movant's second point states:

The motion court clearly erred in denying [Movant's] Rule 29.15 motion for post-conviction relief because a review of the record leaves a definite and firm impression that [Movant] was denied due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Missouri Constitution in that the court violated Section 217.362 by not notifying the Department of Corrections prior to sentencing to determine whether [Movant] was eligible for the long-term drug treatment program as required by the statute. [Movant] was prejudiced in that the court's omission constituted a substantial failure to comply with Section 217.362 and thereby violated [Movant's] constitutional rights to due process.

Movant's point alleges trial court error. Generally, claims of trial court error are not cognizable in a Rule 29.15 motion. *Osborn v. State*, 370 S.W.3d 324, 327 (Mo. App. 2012). "A Rule 29.15 motion cannot be used to obtain review of matters which were or should have been raised on direct appeal." *Phillips v. State*, 214 S.W.3d 361, 364 (Mo. App. 2007). "Claims of trial error will only be considered in a Rule 29.15 motion where fundamental fairness requires, and then, only in rare and exceptional circumstances." *McIntosh v. State*, 413 S.W.3d 320, 331 (Mo. banc 2013) (citation omitted).

Movant was sentenced on January 11, 2010. He filed his notice of appeal the next day. All briefs were filed before the end of 2010, and the case was docketed for oral argument in April 2011. Movant and the trial court were not informed of Movant's ineligibility for the treatment program until March 16, 2011. Under these circumstances, Movant's Rule 29.15 motion presented his first opportunity to raise this claim of trial court error. Accordingly, this is one of those rare circumstances when fundamental

7

fairness requires us to consider this claim of trial court error as a part of his post-conviction proceeding.[4]

Section 217.362 provides for the creation and implementation of "an intensive long-term program for the treatment of chronic nonviolent offenders with serious substance abuse addictions who have not pleaded guilty to or been convicted of a dangerous felony as defined in section 556.061." § 217.362.1.

> Prior to sentencing, any judge considering an offender for this program shall notify the department. The potential candidate for the program shall be screened by the department to determine eligibility. The department shall, by regulation, establish eligibility criteria and inform the court of such criteria. The department shall notify the court as to the offender's eligibility and the availability of space in the program. ... If the court is advised that an offender is not eligible or that there is no space available, the court shall consider other authorized dispositions.

§ 217.362.2. After Defendant was found guilty, he was apprised of his right to a sentencing assessment report, and he waived that right. At sentencing, Movant's counsel requested that the trial court order Movant be placed in the § 217.362 treatment program. The following colloquy occurred:

> THE COURT: I'm of the opinion that – and we obviously haven't had him screened – based on his prior convictions, he probably wouldn't qualify. Did you investigate?
>
> [MOVANT'S COUNSEL]: He does qualify for the long-term treatment program, your Honor. It requires two prior convictions and a sentence of at least five years.
>
> THE COURT: But with the other prior matters involving assaults and so forth –

---

[4] Our decision to review Movant's claim on the merits is supported by the Court's analysis in *State ex rel. Taylor v. Moore*, 136 S.W.3d 799 (Mo. banc 2004), a case heavily relied on by Movant. In *Taylor*, a defendant sought relief on a similar claim through a writ of habeas corpus. *Id*. at 801. In granting the defendant's relief, the Court noted and excused the defendant's failure to bring his claim as a part of a Rule 24.035 post-conviction proceeding. *Id*.

8

[MOVANT'S COUNSEL]: They do not disqualify him.

THE COURT: That would not?

[MOVANT'S COUNSEL]: No, sir, not to my knowledge. I have – I have not had [Movant] screened, but I understand your concerns with crimes involving violence, and that would preclude him from drug court, but it does not preclude him from long-term treatment.

THE COURT: Well, of course, what qualifies is determined by rules promulgated, adopted by the Department of Corrections.

[MOVANT'S COUNSEL]: Yes, sir.

THE COURT: Until we get their input, it's hard to say one way or the other.

The trial court then proceeded with sentencing, ordering Movant to serve consecutive sentences of ten and fifteen years on the charges of burglary and ACA, respectively. After advising Movant of his rights under Rule 29.15, the trial court stated:

I have absolutely no objection to a placement in the long-term drug treatment, drug and alcohol abuse program. Again, whether or not it fits, I can't say, but I will order it at this point, unless we find out otherwise within the internal workings of the Department of Corrections, that [Movant] doesn't qualify under 217.362, a placement in long-term drug treatment.

The Department of Corrections (DOC) determined Movant was ineligible for the treatment program. A parole analyst advised the trial judge of the DOC's determination "in the event [he] wish[ed] to take alternative action regarding the offender's sentence." The motion court determined Movant was not prejudiced because the trial court had imposed its sentences irrespective of Movant's eligibility for the treatment program.

Movant argues that the trial court erred in failing to investigate his eligibility prior to sentencing. Movant argues his case is analogous to *State ex rel. Taylor v. Moore*, 136 S.W.3d 799 (Mo. banc 2004), and that we should remand the case for a new sentencing

9

hearing. In *Taylor*, the defendant pleaded guilty to three counts of first-degree trafficking and one count of second-degree trafficking. *Id*. at 801. The plea agreement provided the defendant was to be placed in a drug treatment program pursuant to § 217.362. *Id*. After sentencing, the DOC determined the defendant was ineligible for the treatment program. *Id*. The Court determined the defendant was entitled to habeas relief because the trial court erred in sentencing him without first verifying his eligibility for the treatment program. *Id*. The Court specifically noted that "if [the defendant] had known he was ineligible for [the treatment program], he would have rejected the plea agreement and gone to trial. He expected to serve less than two years…but now serves lengthy sentences." *Id*. at 802.

The motion court distinguished *Taylor* because the defendant's guilty plea was premised on his sentencing to the treatment program. We agree with that analysis. In this case, the trial court imposed the sentences he intended to give Movant. Those sentences were in no way conditioned upon Movant's eligibility for long-term treatment. The trial judge explained that he had no objection to Movant's participation in the long-term treatment program *if he was determined to be eligible*. The sentencing transcript reveals that the trial court expressed serious doubts as to whether Movant was eligible for the treatment program and reiterated that his eligibility for the program would need to be evaluated by the DOC. We see no indication in this record that the sentences imposed on Movant were in any way affected by whether he was, or was not, eligible for long-term treatment.

Moreover, any error on the trial court's part was invited. Movant waived his right to a Sentencing Assessment Report, which would have evaluated his eligibility for

10

various DOC programs. More importantly, Movant's counsel repeatedly assured the trial court that Movant was eligible for the treatment program. This led the trial court into making the very error now challenged by Movant. He may not take advantage of self-invited error. *Taylor v. State*, 173 S.W.3d 359, 367 (Mo. App. 2005); *State v. Crenshaw*, 59 S.W.3d 45, 50 (Mo. App. 2001). Unlike *Taylor*, 136 S.W.3d at 802, the record here is clear that Movant's sentence was not contingent on his acceptance into the long-term treatment program. Point II is denied.

After reviewing the entire record, we do not have a definite and firm impression that a mistake was made. Therefore, the findings and conclusions of the motion court are not clearly erroneous. *See* Rule 29.15(k); *Gehrke*, 280 S.W.3d at 56-57. Accordingly, the motion court's order denying Movant's amended Rule 29.15 motion is affirmed.

JEFFREY W. BATES, P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCUR

DON E. BURRELL, J. – CONCUR