**STATE of Missouri, Plaintiff–Respondent,**

v.

**Randy A. MOORE, Defendant–Appellant.**

**No. 24723.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 26, 2002.

---

Irene Karns, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

Randy Moore ("Defendant") appeals from a judgment entered after he was convicted by a jury and sentenced by the trial judge for stealing in violation of § 570.030.[1] Defendant avers the trial court committed plain error when it failed to *sua sponte* declare a mistrial after the State cross-examined Defendant regarding alleged prior convictions. We disagree. We affirm.

On August 2, 2001, (Thursday), Defendant walked onto the lot of Lakeside Motors in Branson, Missouri, to look at trucks. Jim Bohannon ("Bohannon") was working at the time when he and Defendant discussed possible financing arrangements for the purchase of a red 1992 Chevrolet truck. After approximately fifteen minutes, Defendant left the lot, but returned the next day (Friday, August 3). At that time, Scott Faught ("Faught") was the only employee working on the lot, and Defendant asked Faught if he could test-drive a blue 1993 Chevrolet pickup. Defendant told Faught that he spoke with Bohannon on Thursday and test-drove a truck that day. Defendant stated he gave Bohannon a copy of his driver's license and told Faught his name was "Johnny." De-

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

fendant also stated he was going to take the truck "[j]ust down the road a little bit, just for a short test drive." Both Faught and Bohannon testified that the policy of Lakeside Motors was to disallow overnight test-drives. Defendant failed to return the truck, and after receiving a phone call from Faught, Bohannon arrived at the lot at 6:00 p.m. and reported the truck stolen.

Defendant claimed he was given permission to take the truck over the weekend. He testified that he told Faught "I'll see you Monday," and Faught waved to him. However, Faught was standing twenty feet away at the time, and Defendant did not know if he (Faught) heard him (Defendant). Defendant claimed he planned on taking the truck to Louisiana so his parents could see it and decide if they wanted to cosign the loan for the purchase, but would be back in Branson on Monday.

On Friday night, Defendant was in Little Rock, Arkansas, where he stopped at a gas station and helped Marjorie Giroir ("Giroir") because she was having car troubles. She was on her way to Lexington, Kentucky, but the couple ended up spending the night together in a hotel in Little Rock. The next morning Defendant attempted to change license plates with Giroir's car, but she refused. Defendant also tried to convince Giroir to leave her car in Little Rock and ride with him in the pickup to Lexington, and again, she refused. Defendant then began to follow Giroir to Lexington, and along the way, he picked up a hitchhiker. During the trip, the two cars stopped at a gas station in Caneyville, Kentucky, which is approximately 475 to 500 miles away from Branson.

In the early morning hours of Sunday August 5, 2001, sheriff's deputy Roscoe Swift ("Swift") was dispatched to the gas station where Defendant and Giroir had stopped. Defendant was standing by Giroir's car, told Swift he was with Giroir, and denied any affiliation with the pickup truck. At this point, the hitchhiker was being arrested for public intoxication. Initially, Giroir lied to Swift and agreed Defendant was with her. She lied because she did not want to explain the specifics of the situation, i.e., that she had spent the night with Defendant and she was married. Later, however, she informed Swift of the truth, and he sought to question Defendant again. By this time, Defendant was behind the gas station using the bathroom.

When Defendant realized Swift wanted to talk to him, he (Defendant) "took off running fast." The chase distanced approximately 175 yards, and when Defendant was caught, he said, "If I'd knowed [sic] the country, you wouldn't have caught me." Defendant also told Swift that if Giroir "had of [sic] stuck by his plans, he'd been gone, and she wouldn't stick by his plan." Found in the truck were Defendant's clothes, a television set, and a fan. Defendant claimed he never ran from Swift, but did not explain why he was initially arrested other than for receiving stolen property. The jury returned a verdict of guilty after twenty-two minutes of deliberation, and the court sentenced Defendant as a prior offender to seven years' imprisonment in the department of corrections.

Defendant's sole point on appeal alleges the trial court committed reversible error when it failed, *sua sponte*, to declare a mistrial due to the State's cross-examination of Defendant. Defendant correctly notes this alleged error has not been preserved for purposes of appeal because it was not contained in the motion for new trial; even so, Defendant asks this court

for plain error review.[2] Defendant argues the State improperly impeached his credibility on cross-examination by using prior convictions because "the alleged offenses were unsubstantiated."

Prior to trial, Defendant filed a motion in limine to preclude the State from questioning him about prior municipal convictions which are not allowed to be used for purposes of impeachment. *See State v. Albanese,* 920 S.W.2d 917, 926[22] (Mo. App.1996). On direct examination, Defendant admitted he had two prior convictions for felonies and had "a couple of misdemeanors that [he] spent some time in jail on[.]" On cross-examination, the State asked Defendant the following, "The truth is you've got more convictions than that, don't you, Randy?" Defense counsel objected based upon the motion in limine, and the trial court sustained the objection because the question was "vague" and "improper."

The State then rephrased the question, and Defendant answered, without objection, that he "may have five" misdemeanors. Defense counsel objected after the answer was given, and the trial court told the State that "if you want to impeach him and you have proof of a conviction and can prove the conviction, go ahead and ask him about it, but the approach you're taking right now is not proper. Okay." Thereafter, the State elicited from Defendant that he was convicted of resisting arrest in Taney County, Missouri, in January 2000. Then, the State asked if Defendant had "a misdemeanor shoplifting conviction...from the State of Florida[.]" Defense counsel again objected and stated

the criminal history did not show whether this conviction was for a county or municipal violation. The trial court stated, "I fail to see the point of pushing this matter to a mistrial.... If you can prove the conviction, you can ask him about it. If all you've got is a print off a computer, you can't prove the conviction. We're done." The State then moved on to questioning of other matters.

■■■ When an accused elects to testify in his or her own behalf, the state has an absolute right to show prior convictions for purposes of impeachment. *State v. Giffin,* 640 S.W.2d 128, 132[16] (Mo.banc 1982); § 491.050.[3] The convictions must be for felonies or misdemeanors, but this principle does not extend to municipal ordinance violations. *State v. Keenan,* 779 S.W.2d 743, 746[4] (Mo.App.1989). Proof of prior convictions "may be either by the record *or by his* [or her] *own cross-examination,* upon which he [or she] must answer any question relevant to that inquiry ...." § 491.050 (emphasis supplied). Although the scope of cross-examination usually falls within the trial court's sound discretion, a "trial court has no discretion to prevent the use of prior criminal convictions to impeach the credibility of a witness or the accused." *State v. Hoopingarner,* 845 S.W.2d 89, 94[17] (Mo.App.1993). The state is permitted to further examine an accused when he or she initially fails to disclose all prior convictions. *State v. Taylor,* 589 S.W.2d 302, 304[2] (Mo.banc 1979). "Repetition or rephrasing of a question is not improper, so long as the questioning is designed to elicit an answer regarding the fact of an additional convic-

---

**2.** In pertinent part, Rule 30.20, Supreme Court Rules (2002), provides "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

**3.** In pertinent part, the statute provides: "Any person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case ...."

tion." *Hoopingarner*, 845 S.W.2d at 94[19].

■ The problem with Defendant's argument on appeal is that based upon this record he can show no error, plain or otherwise. This follows because there was *no evidence* that the State's questioning was in regard to municipal convictions. Defendant initially disclosed he had "a couple of misdemeanors." On cross-examination, Defendant admitted that he "may have five." The State had an absolute right to inquire about these other convictions and prove them "either by the record *or by ... cross-examination.*"[4] § 491.050 (emphasis supplied). There could be no error if the State's questioning was in regard to convictions other than municipal violations. As such, *at a minimum* to demonstrate error, Defendant was required to show the State's questions were improper, i.e., related to municipal convictions. This was Defendant's burden on appeal. *State v. Galindo*, 973 S.W.2d 574, 576 (Mo.App.1998); *State v. Brown*, 950 S.W.2d 930, 932[6] (Mo.App.1997). He has wholly failed to meet this burden.

■ Even assuming, *arguendo*, the State's cross-examination related to municipal convictions, we would still find no error, plain or otherwise. This follows because "[w]here valid and invalid convictions are used to impeach a defendant's credibility and the evidence of guilt is strong, the error is harmless." *State v. Waring*, 779 S.W.2d 736, 742[9] (Mo.App. 1989). Moreover, the trial court will not be required to declare a mistrial absent extraordinary circumstances. *State v.*

4. Certainly, the questions on cross-examination of prior convictions must be in proper form and done in good faith. *State v. Spivey*, 191 Mo. 87, 90 S.W. 81, 88 (Mo.1905); *State v. Charlton*, 465 S.W.2d 502, 503 (Mo.1971); *State v. Ware*, 449 S.W.2d 624, 626 (Mo.1970);

*Thompson*, 985 S.W.2d 779, 787 (Mo.banc 1999).

Here, the evidence of guilt was not only strong; it was overwhelming. Defendant took the truck without permission and left the state, i.e., he informed Faught that he was going on a "short" test-drive. Moreover, he lied to Faught in order to gain access to the truck. Also, he attempted to steal another individual's license plates and place them on the truck. Defendant lied to the police when questioned about the truck, and he had numerous personal belongings in the truck indicating he did not plan on returning to the state. Defendant ran from the police to evade capture and made incriminating statements when caught. Also important is the fact that at trial when Defendant was questioned about his prior convictions, defense counsel did not request that the jury disregard the alleged improper questions, nor did counsel request a mistrial. Defendant did not even answer the final question. Given these circumstances, error, if any, was harmless. These are not the types of extraordinary circumstances requiring the drastic remedy of a mistrial. Point denied.

The judgment is affirmed.

PREWITT, P.J., and PARRISH, J., concur.

*Keenan*, 779 S.W.2d at 746. Here, however, Defendant does not argue the questions were improperly phrased or asked in bad faith. It appears that Defendant merely assumes the questioning regarded municipal convictions.