STATE of Missouri, Plaintiff–
Respondent,

v.

Michael Allen TABOR, Defendant–
Appellant.

No. 27206.

Missouri Court of Appeals,
Southern District,
Division One.

June 27, 2006.

---

Margaret M. Johnston, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Robert J. Bartholomew, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

Appellant Michael Allen Tabor ("Defendant") was charged as a prior and persistent offender with the class D felony of unlawful use of a weapon, in violation of Section 571.030.[1] Following a jury trial, he was found guilty and was sentenced to seven years in the Missouri Department of Corrections. Defendant appeals. We affirm and remand with directions for the trial court to correct a clerical error.

## 1) Factual and Procedural Background

Defendant does not challenge the sufficiency of the evidence supporting his conviction. The evidence viewed in the light most favorable to the verdict shows the following:

Defendant moved to Laclede County in order to look after his niece, Doris "De De" Malone, who was suffering from cervical cancer. Malone rented a trailer from Judith Milholland. When Malone fell behind on her rent, Milholland evicted her in early 2004. Defendant then moved in with Milholland and her roommate, Ralph Klinglesmith. Defendant brought with him a chair, which he used to sleep in, as well as a shotgun that he had obtained from Dennis Hamilton, a friend with whom he had previously resided.

Milholland had a van with a bad transmission. Defendant agreed to fix the transmission for a sum of $500. She paid Defendant most of the money, but the transmission work was never completed. On February 21, 2004, Milholland confronted Defendant at their residence, telling him that she either wanted her money returned or the transmission fixed.

Defendant, who was intoxicated at the time, grabbed the shotgun he had brought from Dennis Hamilton's house and pointed it at Milholland's forehead. Defendant then said, "Well, I guess I'll just blow your fucking head off." Klinglesmith was present in the room, and Defendant walked over, pointed the gun at Klinglesmith and said, "Maybe I'll blow him away to make you feel bad." Defendant then walked back to Milholland, pointed the gun at her and said, "No. I think I'll blow you away because that will make Ralph sad." Defendant returned to Klinglesmith once again and said, "No. I think I'll shoot Ralph first, because after all that will make you feel worse." Milholland and Klinglesmith were afraid. Defendant then sat down and passed out. Milholland took the gun, which was loaded, removed the round and put it under her bed.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

Neither Milholland nor Klinglesmith contacted law enforcement immediately, because they were afraid of Defendant, and he still owed them money. Defendant left Milholland's house within a few days, and at that time, Milholland contacted law enforcement. Milholland and Klinglesmith met with law enforcement and turned the shotgun over to Laclede County sheriff's investigator, George Young.

Defendant was arrested and charged with the class D felony of unlawful use of a weapon. The information alleged that Defendant "knowingly exhibited, in the presence of one or more persons a shotgun, a weapon readily capable of lethal use, in an angry or threatening manner." The case was moved to Pulaski County on a change of venue, and the State filed an amended information to charge Defendant as a prior and persistent offender.

Trial was held on the matter on June 9, 2005. Defendant testified on his own behalf denying the occurrence of the incident described by Milholland and Klinglesmith. Under direct examination by his counsel, Defendant testified to the following:

Q: In fact, sir, have you had any other contacts before this incident with respect to the criminal justice system?

A: Yes, sir. I had a—I got caught with some marijuana in 1980 and then again in 1983. Is—My only felony convictions I've ever had is for marijuana.

Q: So it's two—you have two felony convictions before this charge?

A: Yes. Sales for a quarter pound and possession of two ounces and a pack of rolling papers.

Further testimony from Defendant on direct examination revolved around the circumstances under which the Defendant acquired the gun from Dennis Hamilton.

Defendant testified that Milholland had asked him if he could borrow a gun for her to shoot some stray dogs. Defendant went on to state:

A: ... There was a .22 there; I could have grabbed that. But I'm an animal lover; I didn't really want her to shoot the dog, but I knew whoever shot that rickety shotgun there was more than likely [sic] get a pretty nasty bruise on the hand or finger or something and maybe they wouldn't want to shoot it again.

Under cross-examination by the prosecutor, Defendant admitted that he also pleaded guilty to a felony failure-to-appear charge. The prosecutor also asked questions about other criminal convictions, and Defendant admitted that he pleaded guilty to a DWI charge and forty-six other misdemeanors. Defendant also offered that he had not had a driver's license since he was twenty-two years old, although he continued to drive.

The prosecutor reminded Defendant that he said on direct examination that he is an animal lover, and Defendant responded, "Yes. I love animals very much." The prosecutor then asked, "Have you ever mistreated animals?" Defendant's attorney objected and asked to approach for a bench conference. Defendant's attorney argued that the issue was irrelevant, and the prosecutor argued that Defendant introduced the subject of being an animal lover and he was therefore allowed to impeach him.[2] The trial judge overruled the objection and allowed the question. Further cross-examination of Defendant took place:

Q: Sir, didn't you say on direct examination that you were an animal lover?

**2.** Appellant was tried in Pulaski County on June 8, 2005, the day before this trial, and a jury returned a guilty verdict for felony abuse of a horse.

A: Yes. I love animals very much.

Q: So yesterday in this very courthouse weren't you found guilty by a jury of animal abuse?

A: I was found guilty of what should have been structured as a misdemeanor.

Q: Sir, my question is—

A: Yes.

Q: —yesterday on a felony charge of animal abuse, weren't you found guilty by a jury in this courthouse?

A: I was found guilty of accidentally hurting one of my animals.

Q: Weren't you found guilty of the charge of animal abuse?

A: Yes.

Q: A felony charge of animal abuse yesterday?

A: Yes. Yes.

During the State's closing argument, the prosecutor stated the following:

You can contrast their testimony with that of the defendant's. The defendant took the stand and under direct examination he said he had two felonies and that's kind of it. I showed that he had a third, and he wanted to weasel around that. He didn't remember it, thought you were talking about misdemeanors; I really don't remember that; it wasn't that big a deal, so I didn't remember it. But, you know, if I didn't have that piece of paper laid out in front of him and shown him, if I didn't raise that up and say, "You didn't have that," do you think he would have admitted it? No, he wouldn't have admitted that. He wouldn't admit that he had a felony. I had the record for those charges. Do you think he would have told you about his 46 misdemeanors if I didn't have the records to that, hadn't proved on this felony failure to appear that I had that record? If I hadn't demonstrated to him that I had records to show that he

was not being forthcoming with you, do you think he would have admitted it? Certainly not.

He says he's an animal lover. No. He didn't want us to bring out the fact that in this courthouse yesterday he was convicted of felony animal abuse. He didn't want that to come out. Why? Because he was trying to hide it from you.

I submit to you that this is a swearing match. It's hard for you to determine that. I understand. You don't know the people involved; you don't know the parties. You've got to look at the motivation for telling the truth, their motivations for lying. I submit if you do that, you will find the defendant is guilty of unlawful use of a weapon. Thank you.

Defendant's counsel made no objection to the prosecutor's closing argument.

In his rebuttal closing statement, the prosecutor further stated:

Is his story consistent throughout? If he had taken the stand and told you about—been up-front with you about his prior history, then perhaps you could believe him. But again, he didn't. He got up on the stand and he lied to you about his felonies, he lied to you about his misdemeanors, he lied to you about being an animal lover. . . .

Defendant's counsel again did not raise any objection. The jury returned a guilty verdict. Defendant made no claim of error regarding the prosecutor's closing arguments in his motion for new trial. The trial court sentenced Defendant to seven years in the Department of Corrections. This appeal followed.

Defendant's sole issue on appeal focuses on three words in the State's closing argument. Defendant claims that the trial court erred in allowing the prosecuting attorney to argue that Defendant was "trying to hide" his conviction for animal

abuse, as he contends these words went beyond a permissible comment on Defendant's credibility and was instead an impermissible comment on Defendant's bad character.

### 2) Standard of Review

■■■ Defendant acknowledges that the relief sought on appeal was not properly preserved for appeal due to his failure to raise an objection in the trial court when the statement was made or in his motion for new trial. When a matter is not preserved for appellate review, reversal is appropriate only if the appellate court finds plain error. *State v. McKibben*, 998 S.W.2d 55, 60 (Mo.App.1999). Plain error review is governed by Rule 30.20 [3] and is proper only when the defendant can show that there is a prejudicial error that so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Parkus*, 753 S.W.2d 881, 887 (Mo. banc 1988). To reverse a conviction under plain error review on a claim of improper closing argument, a defendant must establish not only that the argument was improper, but that it had a decisive effect on the outcome of the trial and would amount to a manifest injustice or miscarriage of justice if the error were left uncorrected. *State v. Lyons*, 951 S.W.2d 584, 596 (Mo. banc 1997).

■■■ Whether to grant plain error review lies within the reviewing court's discretion. *State v. Johnson*, 95 S.W.3d 221, 225 (Mo.App.2003). Missouri appellate courts have construed plain error review as a two-step process. *State v. Hagan*,

113 S.W.3d 260, 267 (Mo.App.2003). First, a court must decide " 'whether the allegation of error facially established substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. In effect, an appellate court must determine whether, on the face of the claim, "plain error" has, in fact, occurred.' " *Id.* (quoting *State v. Brown*, 97 S.W.3d 97, 100 (Mo.App.2002)). If not, we should decline to exercise our discretion to further review the claim. *Id.* If so, " 'step two of the process authorizes the appellate court[, in its discretion,] to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.' " *Id.* (quoting *Brown*, 97 S.W.3d at 100). Statements made in closing argument will only rarely amount to plain error. *State v. Clayton*, 995 S.W.2d 468, 478 (Mo. banc 1999).

### 3) Discussion

■■■ The sole issue raised on appeal is whether the trial court erred in permitting [4] the prosecuting attorney to argue that Defendant was "trying to hide" his conviction for animal abuse. Defendant argues that this statement was improper and created a manifest injustice, in that it went beyond commenting on the Defendant's credibility and was instead a comment on his bad character which had a decisive effect on the jury's verdict.

■■■ It has long been established that it is generally error for the State to introduce bad character traits of an accused in an attempt to sway a jury. *State v. Robinson*, 344 Mo. 1094, 130 S.W.2d 530, 531 (1939). The character of an accused

---

**3.** All references to Rules are to Missouri Court Rules 2006 unless otherwise specified.

**4.** "[A] trial court's failure to *sua sponte* address improper statements made in closing argument rarely constitutes plain error requiring reversal, because without an objection

or request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *Hagan*, 113 S.W.3d at 267.

may become involved in a criminal trial in two aspects. First, if the defendant testifies, "he may be impeached for truth and veracity, the same as other witnesses." *Id.* Second, the reputation of an accused "with respect to the essential traits of character involved in the offense for which he is on trial is always relevant" in order to illustrate innocence. *Id.* However, in order to prevent a possibility of an unmerited conviction, the bad character of an accused may not be made the topic of questioning, unless and until the accused offers an issue involving his character. *Id.* It is well established that a defendant who chooses to take the stand and testify on his own behalf "is subject to contradiction and impeachment the same as any other witness." *State v. Selvy*, 921 S.W.2d 114, 116 (Mo.App.1996). Where a defendant refers to a subject, even in a general way, he subjects himself to be cross-examined about that subject. *State v. Foulk*, 725 S.W.2d 56, 70 (Mo.App.1987).

Defendant is claiming that by allowing the prosecutor to argue that he was "trying to hide" his animal abuse conviction, the prosecutor is commenting on his character, which goes beyond commenting on Defendant's truth or veracity. However, it was Defendant who injected the issue of

character on his direct examination. On direct examination, Defendant introduced the subject of animals by stating:

> There was a .22 there; I could have grabbed that. But *I'm an animal lover;* I didn't really want her to shoot the dog, but I knew whoever shot that rickety shotgun there was more than likely [sic] get a pretty nasty bruise on the hand or finger or something and maybe they wouldn't want to shoot it again. (Emphasis added).

The prosecutor was permitted, over Defendant's objection, to ask about the jury trial the day before as proper impeachment.[5] Defendant injected the issue of character into the case, and the State was correctly allowed to impeach him on this basis. Throughout the cross-examination on the matter, Defendant was not clear in his answers. The prosecutor had to ask Defendant three times before he admitted that he had been found guilty the day before.

The evidence against Defendant consisted of the testimony of Milholland and Klinglesmith establishing the occurrence of the shotgun incident. Defendant's testimony denied that the incident occurred. The jury could either believe Milholland and Klinglesmith's testimony or believe Defen-

---

5. Appellant had a jury trial the day before on the charge of felony abuse of an animal arising out of a separate incident. The jury returned a guilty verdict and sentencing was set for the same day as sentencing in this case. Upon the prosecutor reminding Defendant that he had stated on direct that he loved animals, Defendant's counsel objected that the line of questioning was irrelevant. The prosecutor argued to the court that Defendant had injected the issue. Counsel argued that because sentencing had not yet occurred, Defendant's finding of guilt was not yet a "conviction" (as defined by Rule 29.11(c)). The trial court overruled this objection. Defendant does not challenge this evidentiary ruling by the trial court in this appeal. However, we note that Section 491.050, RSMo

(2000) provides that "[a]ny person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and *findings of guilty* may be proved to affect his credibility in a criminal case. Such proof may be either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer." (Emphasis added.) Therefore, counsel's objection was without merit, and the State was correctly allowed to use the prior day's finding of guilt to impeach Defendant.

dant's testimony. The credibility of each was critical to the decision of the jury. It is within this context that the prosecutor argued in closing:

> You can contrast their testimony with that of the defendant's. The defendant took the stand and under direct examination he said he had two felonies and that's kind of it. I showed that he had a third, and he wanted to weasel around that. He didn't remember it, thought you were talking about misdemeanors; I really don't remember that; it wasn't that big a deal, so I didn't remember it. But, you know, if I didn't have that piece of paper laid out in front of him and shown him, if I didn't raise that up and say, "You didn't have that," do you think he would have admitted it? No, he wouldn't have admitted that. He wouldn't admit that he had a felony. I had the record for those charges. Do you think he would have told you about his 46 misdemeanors if I didn't have the records to that, hadn't proved on this felony failure to appear that I had that record? If I hadn't demonstrated to him that I had records to show that he was not being forthcoming with you, do you think he would have admitted it? Certainly not.

> He says he's an animal lover. No. He didn't want us to bring out the fact that in this courthouse yesterday he was convicted of felony animal abuse. He didn't want that to come out. Why? Because he was trying to hide it from you.

The prosecutor's comments were clearly an attempt to cast doubt on Defendant's credibility because he was not forthright during his cross-examination by the State and because he had not revealed his entire criminal history when questioned on direct examination by his counsel about his "contacts ... with respect to the criminal justice system." The comment by the State was an attack on Defendant's credibility; it was not part of an attempt to generally attack Defendant's character. The closing argument by the prosecutor was not improper and, therefore, does not provide a basis for plain error review. We decline plain error review. Defendant's point is denied.

Defendant's conviction is affirmed.

## 4) Clerical Error in Judgment

■ Although the preceding discussion disposes of the sole point presented by Defendant, one further matter requires our attention. The "Judgment" contained in the record on appeal appears to contain a clerical error, in that it incorrectly indicates that a finding on the issue of whether Defendant is a prior and persistent offender is "Not Applicable." The information charges Defendant as a prior and persistent offender. The transcript discloses that the trial judge made a finding in open court, on the record, over an objection by Defendant, and beyond a reasonable doubt that Defendant was a prior offender and a persistent offender. Defendant was formally arraigned on this basis immediately preceding his trial and was sentenced based on this finding. If there had been no such finding, the seven-year sentence imposed on Defendant would be outside of the range of punishment.

"The failure to memorialize accurately the decision of the trial court as it was announced in open court was clearly a clerical error." *State v. Taylor*, 123 S.W.3d 924. Rule 29.12 authorizes a trial court to correct clerical errors in the judgment that result from oversight or omission. *Id.* Accordingly, while we affirm Defendant's conviction and sentence, we must remand this case with directions to the trial court to enter an amended written judgment reflecting the judgment and sentence as

announced on the record by the trial judge in open court.

RAHMEYER, P.J., and PARRISH, J., concur.