Joseph WILSON, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 27924.

Missouri Court of Appeals,
Southern District,
Division Two.

June 13, 2007.

258

Mark Allen Grothoff, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

Joseph Wilson (Wilson) appeals from an order denying his amended Rule 29.15 mo-

tion to set aside his convictions for murder in the first degree and armed criminal action. *See* §§ 565.020, 571.015.[1] In the amended motion, Wilson alleged, *inter alia*, that his trial counsel was ineffective for failing to call a witness to testify. After conducting an evidentiary hearing, the motion court denied relief. Wilson contends this ruling was clearly erroneous. We affirm.

## I. Factual and Procedural Background

In September 1999, Wilson was charged by information with murder in the first degree and armed criminal action for killing Wesley Kit Workman (Victim). *See* §§ 565.020, 571.015. The information alleged that Wilson shot Victim to death in April 1997. Following a change of venue, the case went to trial in July 2001. At trial, the State presented evidence that Wilson believed his wife, Crystal Wilson (Crystal), and Victim were having an affair and that he intended to kill Victim.[2] Later, Victim was killed while he was engaged in target practice in the woods with Wilson and his brother, Ray Wilson (Ray). Ray testified that Wilson shot Victim in the back of the head. The State also presented evidence that, in June 1997, Wilson and Crystal left Missouri. Wilson told Crystal that no one was supposed to know where they were going and that she should say they were going to Minnesota. Instead, they moved to the home of Wilson's parents in Iowa. Wilson testified on his own behalf and identified Ray as the person who shot Victim. Crystal and Wilson both testified that the reason they left Missouri was because of an incident in which Crystal's brother and uncle had beaten up Wilson; their move had nothing

to do with Victim's murder. The jury found Wilson guilty as charged, and he was sentenced to serve two consecutive life terms. On direct appeal, this Court affirmed Wilson's convictions and sentences. *State v. Wilson*, 105 S.W.3d 576 (Mo.App. 2003).

In September 2003, Wilson filed a *pro se* motion for post-conviction relief. After appointment of counsel, an amended motion was filed in December 2003. Insofar as relevant here, Wilson's amended motion alleged that his trial counsel was ineffective for failing to call Ray's former wife, Stephanie Wilson (Stephanie), as a witness at the trial. The motion alleged that Stephanie should have testified for the following reasons:

> Reasonably competent counsel would have called Ray Wilson's then-wife Stephanie Wilson to testify at movant's trial. Stephanie had previously talked to the police and told them that she remembered Ray coming back home with a gun in the summer of 1997. Stephanie asked Ray what he was doing with the gun, and Ray told her that he and movant had went target practicing and that, "me and Joe just went and took somebody out." Stephanie understood this to mean that Ray had shot somebody. Stephanie Wilson's testimony would have served to refute that of Ray Wilson and would have lent credence to movant's version of events. In Ray's statement to Stephanie, Ray clearly put himself in a proactive role in the shooting. His statement was not inconsistent with movant's version of events, in that movant testified that he was present during the shooting. Stephanie Wilson was

1. All references to rules are to the Missouri Court Rules (2007). All references to statutes are to RSMo (2000).

2. Because some of the witnesses share the same last name, we use first names for purposes of clarity. No disrespect is intended.

willing and able to testify at movant's trial consistent with her statement to the police. The statement was included in the discovery received by movant's counsel. Reasonably competent counsel would have called Stephanie Wilson to testify at movant's trial. Had she testified, a reasonable probability would have existed of a different result at movant's trial.

(Transcript reference omitted.) On February 22, 2006, the motion court held an evidentiary hearing. The witnesses included Stephanie and Wilson's trial counsel, Michaelle Tobin (Tobin).

At the motion hearing, Stephanie testified that she was interviewed by the police after Victim's murder. During that interview, she told investigators that Ray walked into their home with a gun during the summer of 1997. When Stephanie asked what Ray was doing with the gun, he said "me and Joe just went and took somebody out[.]" Ray "never did say who did it[.]" Stephanie also testified about the circumstances surrounding Wilson's departure from Missouri. Before Wilson and Crystal left the state, Stephanie had gone to a yard sale at the home of Wilson's parents. When Stephanie asked what Wilson and Crystal were doing, she was told that "they were just trying to get enough money to get away and go to Iowa[.]" They appeared to be "in a hurry." Wilson did not look like he had been in a fight, and he said nothing about leaving the state because he had been beaten up by Crystal's brother and uncle.

Wilson's trial counsel, Tobin, testified that she had considered calling Stephanie as a witness, but decided not to do so for three reasons. First, Ray's statement did not amount to an admission that he was

the one who actually killed Victim; it only showed his complicity in the crime.[3] Second, Stephanie was "avoiding" defense counsel prior to trial and started "backtracking" on the information contained in her statement. She "began to get wishy-washy about whether or not [Ray] had made the statement" she attributed to him during the police interview. Third, Stephanie's testimony could have potentially harmed Wilson's defense by contradicting his testimony that it was Crystal's family, rather than Victim's murder, that caused Wilson to leave Missouri. The motion court denied relief on this claim because it found that Tobin's decision not to call Stephanie as a witness "was sound trial strategy." This appeal followed.

## II. Standard of Review

 To determine whether an attorney has provided ineffective assistance to a criminal defendant, we apply the standards established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail, Wilson had to prove that: (1) counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and (2) counsel's poor performance prejudiced the defense. *Deck v. State,* 68 S.W.3d 418, 425 (Mo. banc 2002). For prejudice to exist, Wilson must prove "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 426 (italics in original). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

---

**3.** In fact, Stephanie originally had been endorsed by the prosecution as a potential witness for the State.

■ Wilson alleged that his trial counsel was ineffective for failing to call Stephanie as a witness at trial. He bore the burden of proving that allegation by a preponderance of the evidence. Rule 29.15(i). "A strong presumption exists that trial counsel was effective and an appellant bears a heavy burden of overcoming that presumption by a preponderance of the evidence." *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996).

■ As required by Rule 29.15(j), the motion court issued findings of fact and conclusions of law to support its denial of relief. The court found that Wilson failed to prove trial counsel was ineffective because counsel's decision was sound trial strategy. "Trial strategy is not a ground for ineffective assistance of counsel." *State v. Chambers*, 891 S.W.2d 93, 109 (Mo. banc 1994); *Storey v. State*, 175 S.W.3d 116, 125 (Mo. banc 2005). Our review is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k); *Williams v. State*, 168 S.W.3d 433, 439 (Mo. banc 2005). This Court will determine that such clear error exists only if, after reviewing the entire record, we are left with the definite and firm impression that a mistake has been made. *Storey*, 175 S.W.3d at 125; *Marschke v. State*, 185 S.W.3d 295, 302 (Mo.App.2006).

### III. Discussion and Decision

■ The motion court concluded that trial counsel's decision not to call Stephanie was a sound trial strategy. "As a matter of trial strategy, the determination to not call a witness is virtually unchallengeable." *Worthington v. State*, 166

S.W.3d 566, 577 (Mo. banc 2005). To prevail on an ineffective assistance claim for failure to call a witness, a movant must show, *inter alia*, that "the witness's testimony would have produced a viable defense." *Hutchison v. State*, 150 S.W.3d 292, 304 (Mo. banc 2004); *Worthington*, 166 S.W.3d at 577.[4] Further, if a potential witness's testimony would not unqualifiedly support a defendant, failure to call such a witness does not constitute ineffective assistance. *Worthington*, 166 S.W.3d at 577.

■ In Wilson's sole point on appeal, he contends the denial of his motion for post-conviction relief was clearly erroneous because trial counsel was ineffective for failing to call Stephanie as a witness. According to Wilson, Stephanie's testimony regarding Ray's statement that "me and Joe just went and took somebody out" would have provided independent corroboration of Wilson's testimony that Ray shot Victim and changed the outcome of the trial. For three reasons, we disagree.

■ First, Stephanie's testimony would not have provided Wilson with a viable defense or unqualifiedly supported his theory of defense that Ray actually killed Victim. *See Maclin v. State*, 184 S.W.3d 103, 109 (Mo.App.2006). Assuming Stephanie had been willing to testify that Ray said "me and Joe just went and took somebody out[,]" this statement did not indicate who actually shot Victim. Ray's comment was so equivocal that it could easily be interpreted to mean Wilson was the one who shot Victim, and Ray was simply complicit in the crime. This is particularly true in light of Stephanie's admission that Ray "never did say who did it[.]" "When

---

4. Although not at issue here, a movant must also show that: (1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; and (3) the witness would testify. *Worthington*, 166 S.W.3d at 577.

defense counsel believes a witness' testimony would not unequivocally support [the] client's position, it is a matter of trial strategy not to call him, and the failure to call such witness does not constitute ineffective assistance of counsel." *Winfield v. State*, 93 S.W.3d 732, 739 (Mo. banc 2002); *Phillips v. State*, 214 S.W.3d 361, 367 (Mo. App.2007); *Fortner v. State*, 186 S.W.3d 910, 912 (Mo.App.2006).

Second, Tobin had reason to believe that Stephanie would not testify consistently with the statement she had initially given to police in the summer of 1997. Prior to trial, Stephanie began avoiding defense counsel and giving indications that she was "backtracking" on the information contained in her police statement. Tobin specifically testified that Stephanie "began to get wishy-washy about whether or not [Ray] had made the statement[.]" Under such circumstances, calling Stephanie as a witness at Wilson's trial would have created a substantial risk that she would deny Ray even made the statement attributed to him during Stephanie's police interview. Had that occurred, Stephanie's testimony would have undercut Wilson's theory of defense and his own trial testimony that Ray was the one who actually shot Victim. "An attorney is not ineffective for failing to further investigate or call a witness to testify who is unwilling to do so and who cannot be counted on to give testimony favorable to [the] client." *Clayton v. State*, 63 S.W.3d 201, 208 (Mo. banc 2001).

Third, Stephanie had personal knowledge of the circumstances surrounding Wilson's departure from Missouri. During the yard sale at the home of Wilson's parents, Stephanie spoke directly to Wilson and Crystal. Stephanie was told that "they were just trying to get enough money to get away and go to Iowa[.]" Wilson and Crystal appeared to be "in a hurry."

Wilson did not look like he had been in a fight, and he said nothing about leaving the state because he had been beaten up by Crystal's brother and uncle. If Stephanie had been called as a witness, the prosecution could have adduced this testimony. Doing so would have contradicted Wilson's testimony that he moved to Iowa to get away from Crystal's family. Under these circumstances, trial counsel was not ineffective for failing to call a witness who would have contradicted Wilson's testimony and thereby undermined his credibility. *See Clayton*, 63 S.W.3d at 208–09; *Maclin*, 184 S.W.3d at 110.

After reviewing the entire record, we do not have a definite and firm impression that a mistake was made. Therefore, the findings and conclusions of the motion court are not clearly erroneous. *See* Rule 29.15(k); *Williams v. State*, 168 S.W.3d 433, 439 (Mo. banc 2005). Wilson's point on appeal is denied, and the motion court's order denying his Rule 29.15 motion is affirmed.

GARRISON, J. and BARNEY, J., Concur.