Michael A. TABOR, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. SD 30596.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 21, 2011.

Motion for Rehearing or Reconsideration and Transfer Denied Dec. 13, 2011.

Application for Transfer Denied Jan. 31, 2012.

---

348

Jeannie M. Willibey, Kansas City, MO, for Appellant.

Chris Koster, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Judge.

Michael Tabor (Tabor) appeals from an order denying his amended Rule 29.15 motion to set aside his conviction for unlawful

use of a weapon. *See* § 571.030.[1] Because the motion court's decision to deny relief after an evidentiary hearing was not clearly erroneous, we affirm.

This post-conviction proceeding arose from Tabor's conviction for the class D felony of unlawful use of a weapon. The information alleged that Tabor "knowingly exhibited, in the presence of one or more persons a shotgun, a weapon readily capable of lethal use, in an angry or threatening manner." As of the date of Tabor's trial, he had three felony convictions: (1) an April 1991 conviction for distribution of marijuana; (2) an October 1994 conviction for possession of marijuana; and (3) an October 1994 conviction for failure to appear. The day before his jury trial on the unlawful use of a weapon charge, he also had been found guilty by a jury of committing felony animal abuse by dragging a nine-month-old colt behind a van so long that the horse's hooves and bones were worn all the way into the joint. In addition, Tabor had 29 misdemeanor convictions for the following crimes: "5 speeding tickets, 5 driving while suspended or revoked, 5 careless and imprudent driving, 3 no driver's license, 1 eluding a police officer, 1 failure to signal, 1 improper passing, 2 driving while intoxicated, 2 blood alcohol content, 2 possession of marijuana, and 2 possession of drug paraphernalia."

At trial, Judith Milholland (Milholland) and Ralph Klinglesmith (Klinglesmith), testified that Tabor threatened each of them with a shotgun at close range and that they were afraid Tabor would shoot them.

During Tabor's case-in-chief, he testified on his own behalf. During his direct examination, he denied ever pointing the shotgun at the victims. He also gave the following testimony about his prior convictions:

Q. Now, Mr. Tabor, you are not new to the criminal justice system, are you?

A. No, sir, I'm not.

Q. In fact, sir, have you had any other contacts before this incident with respect to the criminal justice system?

A. Yes, sir. I had a—I got caught with some marijuana in 1980 and then again in 1983. Is—My only felony convictions I've ever had is for marijuana.

Q. So it's two—you have two felony convictions before this charge?

A. Yes. Sales for a quarter pound and possession of two ounces and a pack of rolling papers.

Tabor said he received a ten-year sentence on the first charge and a five-year sentence on the second charge. Tabor also knew that, as an ex-felon, he was not supposed to have firearms. Nevertheless, he admitted having a weapon in his possession. He testified that he obtained a shotgun at Milholland's request so she could shoot two dogs that were killing her cats:

There was a .22 there; I could have grabbed that. But I'm an animal lover; I didn't want [Milholland] to really shoot the dog, but I knew whoever shot that rickety shotgun there [would] more than likely get a pretty nasty bruise on the hand or finger or something and maybe they wouldn't want to shoot it again.

During cross-examination, Tabor admitted that he had been told to "stay out of trouble" after being in the Department of Corrections. The prosecutor asked if Tabor had any other felony convictions besides the two for marijuana possession. Tabor testified that he might have had one for possession of a controlled substance, but he wasn't sure. Aside from those convic-

1. All rule references are to Missouri Court Rules (2011). All statutory references are to RSMo Cum.Supp. (2003), unless otherwise specified.

tions, Tabor testified that he had "basically" stayed out of trouble, except for a parole violation. The following then occurred:

Q. ... And sir, isn't it true that you also went to prison on a failure to appear charge?

A. No, I never was convicted on failure to appear.

Q. Sir, is it your testimony you did not appear in the—

A. Not that I know of.

Q. Sir, don't you realize whether—you would not know whether you pled guilty to a felony or not?

A. To the best of my knowledge, I don't remember pleading guilty to that, but if I did, if you've got it in black and white, you're the prosecutor, I'm sure you know.

The prosecutor offered to allow Tabor to review a document to refresh his memory, but he declined to do so. Tabor said he was not denying that he pled guilty to failing to appear, but simply could not remember doing so.

Cross-examination then continued as follows:

Q. So now that we've talked about the three felonies and the one that you're not sure about that you pled guilty to or may have pled guilty to or disposed of back in 1980, does that pretty much clear up your criminal history?

A. I had asked earlier Your Honor about the—my jury trial yesterday, do I need to bring that up too?

Q. Well, I'm asking about other matters at this point. Other than those three and that one that maybe you pled guilty to in 1980, was there another? Absent what happened this past week, what—

A. To the best of my knowledge, the only thing I've ever pled guilty to is sales of marijuana—a quarter pound of marijuana and two ounces of marijuana and a pack of rolling papers. I did not know that I pled guilty to a failure to appear. Maybe I was misled into pleading guilty to something that I did not know about.

Q. So your attorneys have misled you perhaps? How about June of 2003, do you recall pleading guilty to DWI in the associate court or driving with an excessive blood alcohol content?

A. I sure do.

Q. Okay. You remember that one?

A. Are we talking—That's not a felony; that's a misdemeanor.

Q. Okay. What I'm talking about is trouble, sir, criminal offenses.

. . . .

Q. Sir, I'm talking about criminal matters. I thought we understood what we were talking about, but let me be clearer. Other than those three that we had talked about and perhaps that one in 1980, did you have any other convictions?

A. Yes. I should have like a—To the best of my knowledge, there are 46 misdemeanors in my lifetime, mostly for driving fast cars and different things. Anything you'd like to ask me I'm open to.

Q. 46 misdemeanors?

A. Including traffic tickets and maybe a bar fight at the racetrack. Mr. Prosecutor, whatever you have on paper there I have no defense for it. It's quite apparent that I did that (indiscernible) to times and dates.

Q. All right. 46 misdemeanors?

A. I had quite a few traffic impairments and other things.

The prosecutor then asked Tabor why he wasn't driving his own vehicle, and Tabor

volunteered that he did not have a driver's license. The prosecutor asked appellant how many prior DWIs he had, and Tabor said that he had four within a two-month period.

When questioning Tabor about where he lived before arriving in the area, Tabor said that he came from Branson, Missouri. The prosecutor then asked:

Q. And were you aware, sir, that there were warrants for your arrest while you were up here?

A. The warrants didn't occur for my arrest until after a fact that I was locked up and I got behind on my finances since I've been here. I went through a nasty separation with a girlfriend.

Q. Sir, were there warrants out for your arrest at the time you were claiming you were here in February taking care of your niece?

A. I wasn't aware of any warrants for me at that time.

Q. But it's your testimony today that you weren't aware of any warrants out for your arrest at that time?

A. I was not aware of any warrants out for my arrest until I was picked up on the horse incident.

Later, Tabor said that he hadn't recalled the failure to appear charge because he thought the prosecutor was only asking about felonies and that was a misdemeanor charge. The prosecutor then allowed Tabor to review a document that established that the conviction was for a felony for which Tabor had received a five-year sentence. Tabor then said that he "honestly didn't remember that I pled guilty to a failure to appear on that."

At the end of cross-examination, the prosecutor asked Tabor if he had testified on direct to being an animal lover. Tabor said that he loved animals very much. The prosecutor then asked Tabor if he had been found guilty the day prior of animal abuse. Tabor said that it should have been "structured as a misdemeanor," claimed that he was found guilty "for accidentally hurting one of my animals," but then ultimately admitted that he was found guilty of a felony charge of animal abuse.

On redirect, defense counsel asked Tabor about the failure to appear case:

Q. . . . You heard in the cross-examination by [the prosecutor] make reference to the fact that you had been convicted of failure to appear; is that correct?

A. Yes.

Q. And that was in conjunction with one of your pending cases, which I gather was the drug case?

A. On that particular charge that I looked at the paperwork, that was in 1993, possession of a bag of marijuana, pack of rolling papers.

Q. Okay. And in fact, you did plead guilty to that charge?

A. I wasn't aware of that actually, of my knowledge, until just now. I didn't even know that I had done that.

Defense counsel then asked about the "40-something misdemeanors." Tabor said those all related to him "[h]aving really fast cars, building cars, and driving without a license."

In closing argument, the prosecutor argued, in pertinent part, as follows:

You can contrast their testimony with that of the defendant's. The defendant took the stand and under direct examination he said he had two felonies and that's kind of it. I showed that he had a third, and he wanted to weasel around that. He didn't remember it, thought you were talking about misdemeanors; I really don't remember that; it wasn't that big a deal, so I didn't remember it. But, you know, if I didn't have that piece of paper laid out in front of him and

shown him, if I didn't raise that up and say, "You didn't have that," do you think he would have admitted it? No, he wouldn't have admitted that. He wouldn't admit that he had a felony. I had the record for those charges. Do you think he would have told you about his 46 misdemeanors if I didn't have the records to that, hadn't proved on this felony failure to appear that I had that record? If I hadn't demonstrated to him that I had records to show he was not being forthcoming with you, do you think he would have admitted it? Certainly not.

He says he's an animal lover. No. He didn't want us to bring out the fact that in this courthouse yesterday that he was convicted of felony animal abuse. He didn't want that to come out. Why? Because he was trying to hide it from you.

In rebuttal closing argument, the prosecutor argued, in pertinent part, as follows:

Well, I remind you you've got to consider motivation to lie here in this matter. You've got to consider the motivation. What motivation did the defendant have? Well, he's been in the Department of Corrections and doesn't want to go back. Is that alone a reason to lie? Well, it doesn't mean necessarily that you can't absolutely believe what he says without more. Is his story consistent throughout? If he had taken the stand and told you about—been upfront with you about his prior history, then perhaps you could believe him. But again, he didn't. He got up on the stand and he lied to you about his felonies, he lied to you about his misdemeanors, he lied to you about being an animal lover. I had to keep after him about many things. You heard him; he switches testimony about matters while he was testifying under oath.

The jury found Tabor guilty as charged, and he was sentenced as a prior and persistent offender to serve seven years in prison. This Court affirmed Tabor's conviction and sentences on direct appeal in *State v. Tabor*, 193 S.W.3d 873 (Mo.App. 2006).

Tabor filed a timely *pro se* Rule 29.15 motion for post-conviction relief. Appointed counsel filed an amended motion. That motion alleged, *inter alia*, that trial counsel had been ineffective by: (1) failing to provide complete and accurate advice with respect to Tabor's prior criminal record; and (2) failing to object to allegedly improper questions by the prosecutor concerning Tabor's criminal history or by opening the door to such improper questions and argument. The amended motion alleged that, but for trial counsel's aforementioned failures, there was a reasonable probability the outcome of the trial would have been different.

The motion court conducted an evidentiary hearing at which Tabor testified. The deposition of Tabor's trial counsel, James Stevens (Stevens), was admitted in evidence. Thereafter, the court entered its findings of fact, conclusions of law and order denying relief. This appeal followed. Additional facts necessary to the disposition of the case are included below as we address Tabor's two points of error.

We apply the standards established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to determine whether Tabor's trial counsel was ineffective. In order to prevail, Tabor had to prove that: (1) counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and (2) counsel's poor performance prejudiced the defense. *Deck v. State*, 68 S.W.3d 418, 425 (Mo. banc 2002). For prejudice to exist, Tabor must prove "there is a *reasonable probability* that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 426 (italics in original). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Tabor must satisfy both the performance and prejudice prongs of the *Strickland* test to obtain relief. *State v. Kinder,* 942 S.W.2d 313, 335 (Mo. banc 1996). If he fails to satisfy either prong, his claim fails. *Marschke v. State,* 185 S.W.3d 295, 302 (Mo.App.2006). Consideration of the other prong is unnecessary. *Id.*

Tabor bore the burden of proving his allegations. Rule 29.15(i). "A strong presumption exists that trial counsel was effective and an appellant bears a heavy burden of overcoming that presumption by a preponderance of the evidence." *State v. Tokar,* 918 S.W.2d 753, 761 (Mo. banc 1996). Our review is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k); *Williams v. State,* 168 S.W.3d 433, 439 (Mo. banc 2005). This Court will determine that such clear error exists only if, after reviewing the entire record, we are left with "the definite and firm impression that a mistake has been made." *Williams,* 168 S.W.3d at 439; *Cole v. State,* 223 S.W.3d 927, 931 (Mo. App.2007).

### Point I

In Tabor's first point, he contends the motion court clearly erred by denying postconviction relief because trial counsel was ineffective for failing to provide Tabor with complete and accurate advice concerning how he should testify about his criminal record. The following additional facts are relevant to this point.

Tabor's trial counsel, Stevens, testified in his deposition that his standard advice to defendants who were going to testify was: "Don't talk about any misdemeanors or any of this kind of stuff ... any contacts with law enforcement, you know, stay away from. Don't volunteer anything." Stevens told his clients to "[l]isten to the question carefully, take your time and respond accordingly." Stevens said he had not told Tabor that the prosecution could not cross-examine him about city ordinance violations because he was not aware of any city ordinance violations being involved in the case. Stevens said that his "standard spiel" was that "misdemeanors are not disclosable in a jury trial, only felonies, so don't talk about any misdemeanors, don't talk about any other contacts with law enforcement that's of a negative nature." Counsel assumed his investigator had run a criminal history on Tabor, as that was the normal procedure, and that they had probably asked for copies of Tabor's records from the prosecutor's office as well. Stevens recalled that Tabor had a felony record. Counsel was "probably" aware of Tabor's misdemeanors, but wasn't concerned about them because he had not anticipated that Tabor was going to talk about them.

At the post-conviction hearing, the parties entered a stipulation that Tabor, in fact, had 29 misdemeanor convictions.[2] Tabor testified that his counsel had told him that the prosecutor could only bring up prior felony convictions. Tabor said he was prepared to discuss his felony convictions. Tabor asserted that he did not understand when he was asked about his

---

2. The stipulation addressed the criminal records of Tabor and his victims, and was entered into evidence as Exhibit 2. The stipulation summarized Tabor's 29 misdemeanors and three felonies, and also stated neither of the victims, Klinglesmith or Milholland, had any felonies or misdemeanors on the state or federal level.

misdemeanor convictions, and that when he looked over at counsel table, his attorney held up "four fingers and five–45, 50, and so I just split the difference on it, you know, because I had no idea," which was why he said he had 46 misdemeanor convictions. Tabor said the prosecutor was holding a stack of papers, and Tabor assumed that the prosecutor knew how many he had. Tabor said he did not understand that he did not have 46 misdemeanors.

In denying relief on this claim, the motion court found Tabor failed to respond to the prosecutor's inquiry about his prior convictions "wholly or truthfully." The court explained that:

> [Tabor's] responses were "To the best of my knowledge ..." followed by an incorrect statement regarding his prior convictions. In other instances, [Tabor] replied "I honestly don't know but ..." and then a misstatement of fact. This Court notes that the exhaustive dialogue between [Tabor] and the prosecutor on cross-examination is the result of [Tabor's] disingenuous responses to the prosecutor's questions. Had [Tabor] followed trial counsel's advice and affirmed his prior felony convictions and maintained his silence about traffic matters and drivers license issues, much of this dialogue would not have occurred. The Court notes that the reference to parole violations was made by [Tabor] unsolicited by the prosecutor. The Court further notes that the reference to the existence of 46 prior misdemeanor convictions was made by [Tabor].

The motion court therefore declined to find Tabor's counsel at fault for Tabor's failure to follow counsel's advice.

On appeal, Tabor argues that because his trial counsel failed to provide complete and accurate advice with respect to prior convictions, Tabor mistakenly admitted crimes of which he was not convicted and failed to recall a felony to which he pled guilty. As a result, the State argued that Tabor's reluctance to admit all of his felonies and misdemeanors was evidence that he was lying, and that, but for counsel's failure, there was a reasonable probability of a different outcome at trial. We disagree.

Because Tabor chose to testify on his own behalf in his criminal case, he was subject to impeachment with proof of his prior criminal convictions. *Taylor v. State*, 173 S.W.3d 359, 365–66 (Mo.App. 2005); § 491.050 RSMo (2000). The convictions include felonies or misdemeanors, but not municipal ordinance violations. *State v. Moore*, 84 S.W.3d 564, 567 (Mo. App.2002); *see also State v. Green*, 707 S.W.2d 481, 483 (Mo.App.1986) (principle does not extend to parole violations). "Further examination of the accused also is permitted when he or she initially fails to disclose all prior convictions." *Taylor*, 173 S.W.3d at 366; *Moore*, 84 S.W.3d at 567; *see, e.g., State v. Wilson*, 888 S.W.2d 744, 748 (Mo.App.1994) (by making ambiguous statements regarding prior convictions, defendant "opened the door to further inquiry by the state"). In addition, repetition or rephrasing of a question is not improper so long as the questioning is designed to elicit an answer regarding the fact of an additional conviction. *Moore*, 84 S.W.3d at 567. As an initial matter, we note that although Tabor testified that Stevens advised him to be prepared to disclose all of his felonies, and Tabor testified that he was prepared to do so, he initially failed to disclose all of his felony convictions. Much of the dialogue between the prosecutor and Tabor related to his unwillingness or inability to admit that he had a felony conviction for failure to appear. This impeachment alone, which was entirely proper, was sufficient to cause

a reasonable fact-finder to doubt Tabor's credibility.

Stevens did provide Tabor with incorrect advice concerning potential impeachment with misdemeanor convictions. Tabor failed to persuade the motion court, however, that there was a reasonable probability that the outcome of the trial would have been different if Tabor had been correctly advised. That finding is not clearly erroneous. Had Tabor correctly admitted that he had four felony convictions and 29 misdemeanor convictions, the jurors still would have known that Tabor had a significant criminal history that could be considered in assessing his credibility. For impeachment purposes, we do not discern any meaningful difference between having 29 misdemeanor convictions versus 46 misdemeanor convictions. In addition, we agree with the motion court that Tabor diminished his own credibility by not responding to the prosecutor's questions about his prior convictions "wholly or truthfully." Further, Tabor failed to follow counsel's clear instructions to listen to the question and not volunteer information. The record is replete with instances in which Tabor volunteered information that damaged his credibility. For example, he described his misdemeanors as "mostly for driving fast cars" and "traffic impairments," but he later admitted to driving while intoxicated, driving with excessive blood alcohol content, and being convicted of a misdemeanor as the result of a bar fight. Tabor also testified that, as an ex-felon, he knew he was not supposed to have firearms. Nevertheless, he obtained a shotgun. Most importantly, Tabor volunteered that he was an animal lover the day after being found guilty of felony animal abuse. In short, the record is rife with reasons to doubt Tabor's credibility. Because Tabor has failed to show a reasonable probability that a different outcome would have resulted but for counsel's failure to advise him about the possibility of being impeached with his misdemeanor convictions, Tabor's first claim of ineffective assistance of his trial counsel fails. *See Marschke v. State*, 185 S.W.3d 295, 302 (Mo.App.2006). Point I is denied.

### Point II

Tabor's second point contends the motion court clearly erred by denying postconviction relief because trial counsel was ineffective for failing to object to alleged improper questions and closing remarks by the prosecutor concerning Tabor's criminal history.[3] In addition to Tabor's testimony previously set forth in Tabor's first point, the following facts are relevant to his second point.

In Tabor's amended motion for postconviction relief, he alleged that trial coun-

---

**3.** The amended motion also alleged that Stevens was ineffective for opening the door to such questions and argument by asking on direct whether Tabor had "any other contacts" with the criminal justice system. In that motion, however, Tabor specifically denied that trial counsel had opened the door to the State's cross-examination and closing argument. He asserted this allegation in the alternative only in the event the motion court made a specific finding that defense counsel did open the door to such cross-examination and closing argument. As the motion court made no finding, we need not consider this allegation any further. In any event, it is evident from the record that, as a matter of trial strategy, Stevens chose to disclose Tabor's prior convictions during direct examination to "blunt the impact" of such convictions. *Taylor*, 173 S.W.3d at 366 ("a defendant may disclose such information during direct examination to mitigate the effect of the disclosure on his or her credibility"). "Trial strategy is not a ground for ineffective assistance of counsel." *State v. Chambers*, 891 S.W.2d 93, 109 (Mo. banc 1994); *Storey v. State*, 175 S.W.3d 116, 125 (Mo. banc 2005); *Wilson v. State*, 226 S.W.3d 257, 261 (Mo.App.2007).

sel was ineffective for failing to object to the prosecutor's questions about whether Tabor: (1) had "stayed out of trouble" and other references to "trouble" as too broad to elicit responses that could be city ordinance violations; (2) violated parole; (3) possessed a driver's license; (4) been convicted of several DWI offenses; (5) had arrest warrants out for him at the time of the offense; and (6) been convicted of 46 misdemeanors. Tabor further alleged that his trial counsel should have objected when the prosecutor stated in closing argument that Tabor would not have admitted to 46 misdemeanor convictions if the prosecutor did not have the records to prove it.

Stevens testified that he did not object to the prosecutor's questions because they were "character evidence," and he believed the prosecutor had the right to ask the questions. Stevens did not object to questions about having a driver's license or Tabor's DWI convictions because Stevens believed that Tabor had opened the door to those questions by his testimony. Stevens said he should have objected when the prosecutor asked about other warrants. Stevens did not object to the prosecutor's closing argument regarding the 46 misdemeanors since Tabor testified to having that number of misdemeanors. Stevens acknowledged that, because Tabor took the stand, the State had the right to inquire about previous felonies that would impugn Tabor's credibility. Stevens said he would have objected if the prosecutor had asked questions about Tabor's character generally.

In denying relief on this claim, the motion court noted that Tabor's reference to parole violations was unsolicited by the prosecutor, as was the existence of 46 misdemeanors. The court found that once Tabor had introduced the issues into the trial through his own testimony, the prosecution was free to examine Tabor about it.

The motion court further found that, when Tabor suggested he had 46 misdemeanors, the prosecution was entitled to follow up on Tabor's response as to whether he indeed had 46 misdemeanors and, if so, the nature of those convictions. As for objecting to the warrants, the motion court found that, even if those questions were objectionable, there was no reasonable probability that the outcome of this case would be different if counsel had objected.

On appeal, Tabor specifically argues that because his trial counsel failed to object to the prosecutor's improper questions and closing argument, the jury heard that Tabor "had been in trouble constantly and had issues with alcohol and drugs [and that] but for counsel's failure, there [was] a reasonable likelihood of a different outcome at trial." We are unpersuaded by any of Tabor's arguments.

 We agree with the motion court that most of the prosecutor's questions were not objectionable. "Where a defendant refers to a subject, even in a general way, he subjects himself to be cross-examined about that subject." *State v. Tabor,* 193 S.W.3d 873, 879 (Mo.App.2006); *State v. Francis,* 997 S.W.2d 74, 77 (Mo.App. 1999). Further, a defendant may not complain about matters he himself brings into the case. *State v. Baumruk,* 280 S.W.3d 600, 612 (Mo. banc 2009); *Taylor v. State,* 173 S.W.3d 359, 367 (Mo.App.2005). The prosecutor's questions regarding the parole violation, driver's license and 46 misdemeanors came only after Tabor referred to those subjects. With respect to the question regarding the DWI violations, which Tabor has not shown were municipal violations, the State was afforded an absolute right to impeach Tabor with prior misdemeanor convictions. *Taylor,* 173 S.W.3d at 365; *State v. Moore,* 84 S.W.3d 564, 567 (Mo.App.2002). As for Tabor's misdemeanor convictions, the State had a

right to question Tabor about the nature of those convictions. *Moore*, 84 S.W.3d at 567. Furthermore, the prosecutor's statements in closing argument about Tabor's misdemeanors were directed toward the issue of his credibility. As we previously determined on direct appeal, the prosecutor's comments were not improper. *Tabor*, 193 S.W.3d at 880 ("prosecutor's comments were clearly an attempt to cast doubt on [Tabor's] credibility"). Thus, counsel cannot be deemed ineffective for failing to raise non-meritorious objections. *Taylor*, 173 S.W.3d at 367.

■ With respect to Tabor's remaining argument about the warrants, we agree with the motion court that there is no reasonable probability that the outcome of the case would have been different if counsel had objected to that question. The jury was already aware of Tabor's previous misdemeanors and felonies, including the recent felony for animal abuse, and references to warrants would not have changed the outcome of the trial. In addition, as previously established in Tabor's first point, to the extent the case turned on credibility, it was Tabor himself who diminished his own credibility. The motion court's findings in this regard are not clearly erroneous. Point II is denied.

After reviewing the entire record, we do not have a definite and firm impression that a mistake was made. Therefore, the findings and conclusions of the motion court are not clearly erroneous. *See* Rule 29.15(k); *Williams v. State*, 168 S.W.3d 433, 439 (Mo. banc 2005). Accordingly, the motion court's order denying Tabor's Rule 29.15 amended motion is affirmed.

RAHMEYER, P.J., and SCOTT, C.J., concur.